## Appeal of John W. Biddle et al.

A testator by his will, after bequeathing certain legacies, devised and bequeathed all the residue of his estate to his executors in trust, to let and demise the real estate, to collect the rents and profits, to sell and convey the real estate, to permit a certain party to occupy certain premises for her life, and to pay the insurance and taxes thereon, to invest the proceeds of real and personal estate, to pay certain annuities and to pay a certain party $1,000 " when he shall arrive at and if he shall live to the full age of twenty-one years." He then further directed his said executors, after the decease of the said annuitants and of the said legatee before attaining majority, to convey and assign all the residue of his estate, together with the accumulations which might be in their hands after the decease of said annuitants and legatee, to a charity. Testator further directed that the said legacies and annuities should be paid out of the income of his estate, so far as the same would suffice, before any part of the capital should be used for that purpose. At the time of testator's death, the annuitants were all alive, and the legatee had not attained majority. The account of the executors showed a principal in their hands sufficient to produce an income largely in excess of that required for the payment of the annuities and legacy. The court thereupon set apart and allowed them to retain a sum, the income of which was amply sufficient for said purpose, and awarded the balance to the charity. *Held*, that this was error. It was the clear intent of the testator to postpone the period when the charity was to enjoy his bounty, until after the death of the annuitants, and until that time, his executors were entitled to retain the property with the accumulations.

February 1st 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Appeal from a decree of the Orphans' Court of *Philadelphia county :* Of January Term 1882, No. 214.

This was an appeal by John W. Biddle, Joseph G. Heuszey,

[Biddle's Appeal.]

Daniel W. Slack and Alexander D. Stockton, executors of the last will and testament of Alexander J. Derbyshire, deceased, from a decree of the said court, making distribution of the property appearing from an account held by appellants to be in their hands.

The facts of the case were as follows:—Alexander J. Derbyshire died in March 1879, leaving a will wherein appellants were nominated as executors. By the said will, the testator, after bequeathing certain legacies, provided, inter alia, as follows:

" I give, devise, and bequeath to my executors, and the survivors and survivor of them, and the heirs, executors, administrators, and assigns of such survivor, all the rest, residue, and remainder of my estate, real and personal, of which I may be seised and possessed, and to which I may be in any wise entitled at my decease, and which I have not hereinbefore otherwise given, bequeathed, and disposed of, with the appurtenances, to have and to hold the same unto my said executors, and the survivors and survivor of them, and the heirs, executors, administrators, and assigns of such survivor, in trust nevertheless to and for the uses and purposes hereafter mentioned, that is to say:" in trust to let and demise the real estate, and to collect the rents, and income together with full power of sale. In trust to permit and suffer Algemine D. Smith to occupy a certain building during her natural life, the executors to pay the insurance and taxes thereon; in trust to invest the proceeds of real and personal estate in safe and reliable securities; in trust to pay an annuity of $3,000 to said Algemine D. Smith; one of $800 to Caroline Derbyshire and one of $600 to Eliza Ann Henszey; in trust also to pay to Alexander J. Derbyshire, Jr., the sum of $1,000 " when he shall arive at and if he shall live to the full age of twenty-one years" and upon further trust " and my said executors are hereby directed, after the decease of the said Algemine D. Smith, Caroline Derbyshire, and Eliza Ann Henszey, and of the said Alexander J. Derbyshire, Jr., before his arrival at the age of twenty-one years, to convey, assign, transfer, set over, and pay, unto the Contributors to the Pennsylvania Hospital, their successors and assigns, for the charitable uses of said institution, all the rest, residue, and remainder of my estate, real and personal, and of the income, rents, issues, profits, and accumulations thereof, which may remain in the hands of my said executors, unsold or undisposed of as aforesaid, after the decease of the said Algemine D. Smith, Caroline Derbyshire, Eliza Ann Henzey, and Alexander J. Derbyshire, Jr., as aforesaid, and after paying and discharging all my debts and funeral expenses, and all the annuities, legacies, bequests, and sums of money hereinbefore and hereinafter devised and bequeathed, or directed to be paid, and after paying for and dis-

[Biddle's Appeal.]

charging all the charges, taxes, repairs, and insurance upon all my estate and property, real and personal, and all the charges and expenses incident to the sale, management, and settlement of my estate and property as aforesaid, and as hereinafter mentioned."

The testator added a provision to this effect: "The said several legacies, annuities, bequests, and sums of money hereinbefore directed to be paid shall be paid out of the rents, income, issues, and profits of my estate, so far as the same will suffice, before any part of the capital or principal thereof shall be used for the purpose."

At the time of the testator's death all the beneficiaries named in the will were alive, the said Alexander J. Derbyshire not having attained his majority.

Upon the filing of the account of the executors, it appeared that they had in their hands a principal of $326,147.49, producing an annual income of $18,000, to meet annuities which amounted to $4,400 per annum only. It was contended on behalf of the Contributors to the Pennsylvania Hospital that the primary object of the testator was to secure the payment of the interest of $4,400, per annum, to the objects of his bounty; that, subject to the payment of said life interest to the annuitants, the whole estate was vested in them in remainder; and that after a sufficient fund was set aside for that purpose, they were entitled to the present enjoyment of the balance of the estate, both principal and income. They suggested that $125,000 was fully sufficient for that purpose, and asked that the balance of personal estate, amounting to $95,547.49, should be at once transferred to the hospital, "for the charitable uses of the institution," and that the net income of the real estate, after the payment of taxes, repairs, etc., and the expenses of keeping up the property on Fourth street, for Algemine D. Smith, should hereafter annually be paid to them, for the same purpose.

J. Sergeant Price, Esq., the auditor to whom the account had been referred, was of opinion that such distribution should not be made. Exceptions were thereupon filed to his report by the Contributors to the Pennsylvania Hospital, which were sustained by the court in the following opinion by ASHMAN, J.:

"It is unnecessary to consider some of the topics which seem to have been discussed before the auditor. The Act of 18th of April 1853, forbidding accumulations, exempts bequests to charities from its operation, and has, therefore, no application to the will of this decedent. So it may be conceded that the testator was acquainted with the terms of the bequests made by other donors to the several charitable institutions with which he was identified. But it would be hazardous to base an inter-

pretation of his own testamentary intent upon the judgment he may be supposed to have formed respecting similar gifts by others, unless that judgment had been most clearly and unmistakably indicated. In the single instance in which, according to the auditor's report, the testator seems to have expressed an opinion, his criticism was adverse to a trust for accumulation.

"By clause I. of his will, the testator provided as follows: 'My said executors are hereby directed, after the decease of the said Algemine D. Smith, Caroline Derbyshire, Eliza Ann Henszey, and of the said Alexander J. Derbyshire, Jr., before his arrival at the age of twenty-one years, to convey, assign, transfer, set over, and pay unto the contributors to the Pennsylvania Hospital, their successors and assigns, for the charitable uses of said institution, all the rest, residue, and remainder of my estate, real and personal, and of the income, rents, issues, profits, and accumulations thereof, which may remain in the hands of my said executors, unsold or undisposed of.' In the same instrument he had previously given an annuity to Algemine D. Smith of $4,000, for two years after his death, and thereafter of $3,000 during her life; to Caroline Derbyshire an annuity of $800 for life; to Eliza Ann Henszey an annuity of $600 for life; and to his nephew, Alexander J. Derbyshire, Jr., a legacy of $1,000, to be paid to him provided he should attain twenty-one years of age. His estate was valued at $326,147.49, yielding an income of $18,000 per annum. The auditor held that the payment of the legacy to the hospital must await the death of the several annuitants, and that in the mean time the surplus income must accumulate for the benefit of the charity.

"The will was written by the testator himself, and, in some respects, inartificially. A literal construction of the language in the clause which created the trust would annul the bequest to the charity in the event of the survival of the nephew after twenty-one. It is manifest from the whole will that the testator could never have contemplated such a result; but that he meant that the legacy to the nephew should go to the hospital in case of the nephew's death in his minority.

"Two very practical questions are presented: Was any special purpose to be subserved by an accumulation of the whole fund, and were there facts within the knowledge of the testator showing that the charity would be best promoted by a present distribution? The only clue which the will affords to the first proposition is its silence as to any such purpose. There is no hint in the whole instrument of any proposed enlargement of the scope of the charity, or of any change in its methods, which would render necessary a separate and large endowment. The legacy is given 'for the charitable uses of said institution.'

What those uses were no one knew better than the testator himself. It is found as a fact by the auditor that the testator had devoted to the hospital more than twenty-two years of the most valuable portion of his life, and that he was thoroughly acquainted with the details of its management and the means by which it was supported. He must therefore have been cognizant of the fact, which is also expressly found by the auditor, that the demands upon the charity were pressing, and that its necessities were such that the present enjoyment of so large a legacy would be extremely helpful.

"We are not obliged, however, to go outside of the will to discover with reasonable certainty the intention of the testator. Trusts for accumulation are not specially favored by law, and their evils, even when the ultimate object of the trust is a charity, were summarized by GIBSON, C. J., in Hillyard v. Miller, 10 Barr 326. It is impossible to gather from the will a reason why the testator should seek to divert a fund from those to whom it must eventually come, merely to secure a purposeless accumulation. The instrument contains no direction to accumulate, beyond what may be inferred from the use of the word accumulations in the clause which has been quoted. But that word will apply, without any forced rendering of the sentence, to the surplus income of the fund which might be set apart for the annuities. If it had been designed that the fund, after payment of the annuities, should remain intact for the purposes of accumulation until the death of the survivor of the annuitants, it is reasonable to suppose that words of survivorship would have been employed; and the absence of such words, and of all directions to accumulate, is sufficient evidence of an intent to effect an earlier distribution.

"The whole scope of the will leads up to the charity as the ultimate object of the testator's bounty and the recipient of the entire residuary estate. We have seen that this bequest could not have been meant to depend upon the death of the testator's nephew before twenty-one, although that would be the literal result of the language used. For the reasons already given, there is as little room for the belief that the testator meant to postpone the benefit to the charity to a more or less remote and indefinite period; while there is every ground to assume that he intended the gift to vest in possession along with the other bequests. We should hesitate long before venturing to remodel the language of a will. But if, by transposing a single member of the sentence which conveys the gift, without adding or removing a word, we may overcome a latent ambiguity, we certainly have the power to make the alteration. Such an innovation would be no greater than that wrought by Lord ELDON, in Sidney v. Shelley, 19 Ves. 352, where the words, ' subject to

3 OUTERBRIDGE.—34

the trusts thereof,' were considered as inserted. By the change which is suggested, the clause will read : 'My said executors are hereby directed to convey, assign, transfer, set over, and pay unto the Contributors to the Pennsylvania Hospital, their successors and assigns, for the charitable uses of said institution, all the rest, residue, and remainder of my estate, real and personal, and after the decease of the said Algemine D. Smith, Caroline Derbyshire, Ann Henzsey, and of the said Alexander J. Derbyshire, Jr., before his arrival at the age of twenty-one years, of the income, rents, issues, profits, and accumulations thereof which may remain in the hands of my said executors unsold or undisposed of.' Under the clause as thus constructed, a sufficient fund can be set apart to meet the several annuities and the legacy of $1,000, and the balance of the estate can be paid immediately to the charity. Upon the death of an annuitant, the question can be raised and determined whether the proportion of the fund appropriated for the payment of her annuity will be presently payable to the hospital, or will be held to await the death of the remaining annuitants.

It may be observed, that the question of acceleration is not raised by this record, and we are relieved from discussing the cases upon that point, which, in England at least, are certainly conflicting. That question arises, according to Jarman, vol. i. p. *513, where, in a series of consecutive limitations, a particular estate is void in its creation from being limited to a person incapable by law, or who refuses to take, in which case the remainders immediately expectant on such estate are either accelerated, or the interest in question descends to the testator's heir-at-law. There is no such void estate in this instance, and the only inquiry is as to the intention of the testator.

"It was agreed before the auditor that the sum of $125,000 would constitute an ample fund to sustain the annuities. We therefore award that sum to the executors, to meet the annuities and legacy of $1,000, and the balance to the Contributors of the Pennsylvania Hospital."

A decree was subsequently entered in accordance with the above opinion. The executors thereupon took this appeal, assigning for error the decree of the court.

*John G. Johnson*, for appellants.—If the testator intended that the hospital should not take until after the death of the annuitants, the intent was legal and must be enforced. Postponements of enjoyment of vested remainders by charities are respected where similar directions, as against individuals, would not be : City of Philadelphia *v.* Girard, 9 Wright 1 ; Harbin

[Biddle's Appeal.]

*v.* Masterman, L. R. 12 Eq. 559. And this, even though an accumulation was not distinctly directed and only results incidentally.

The express terms of the testator's will clearly postpone the period of the hospital's enjoyment of his estate until after the death of the annuitants. Express words are not requisite for a valid direction to accumulate, if what is ordered necessarily brings about an accumulation: Tench *v.* Cheese, 6 De G. M. & G. 453; Mathews *v.* Keble, L. R. 3 Ch. App. 695.

In the present case, the directions of the testator result inevitably in an accumulation, and also amount to an express direction to accumulate.

The decree of the court clearly violates the intention of the testator, and is not authorized by law.

*A. Sydney Biddle*, for the appellees.—The testator clearly did not intend to postpone the enjoyment of his bounty by the hospital until after the death of the annuitants. His aim was simply to indicate that his estate was subject to the annuities in question, and that the amount not required to fully secure the annuities, was to be paid to the hospital directly.

The phrase " after paying and discharging all my debts and funeral expenses . . . . and after paying for and discharging all the charges, taxes, repairs and insurance upon all my estate and property real and personal, . . . . " clearly means only that the balance of his estate, unnecessary for said purposes, shall be paid directly to the hospital. Such is also the proper construction of the word " after " in the other clauses of testator's will: Lamb *v.* Lamb, 11 Pick. 371; Doe *v.* Dacre, 1 Bos. & P. 250; Luxford *v.* Cheeke, 3 Lev. 125; Browne *v.* Hammond, Johns. (Eng.) 210; Meeds *v.* Wood, 19 Beavan 15; Massey *v.* Hudson, 2 Merivale 130; Key *v.* Key, 4 De G. M. & G. 73; Franks *v.* Price, 3 Beavan 182.

It is inconceivable that the testator should have intended his executors to accumulate without saying so in express terms, particularly as the ordinary motives for accumulation are wanting in the case of a charity.

Apart, moreover, from the testator's meaning, the Act of 23d February 1853, P. L. 98 (Purdon, 451, pl. 227), provides that the balance of an estate may be relieved from the lien of annuities by giving to the Orphans' Court the power to set apart a sufficient portion of the personal property to secure them. The decree of the court was clearly proper under this act.

Mr. Justice Mercur delivered the opinion of the Court, October 5th 1882.

. It is a cardinal rule in the construction of a will, that the intention of the testator shall govern, whenever that intention is clearly manifested, and is not in conflict with established principles of law: Findlay *v.* Riddle, 3 Binn. 149; Middleswarth's Administrator *v.* Blackmore, 24 P. F. Smith 414; Schott's Estate, 28 Id. 40.   All mere technical rules of construction must give way to the plainly expressed intention of a testator if that intention be lawful.   It is a rule of common sense as well as of law not to attempt to construe that which needs no construction: Reck's Appeal, Id. 432.   The popular meaning of a word is the best criterion of the intent of a testator: Hunter's Estate, 6 Barr 97.

This contention is between the executors and testamentary trustees of Alexander J. Derbyshire on the one side, and the Contributors to the Pennsylvania Hospital on the other.   The latter are the residuary devisees.   The question is, whether the time has come which gives them a right to demand any portion of the sum so devised?

After disposing of certain sums of small amounts, the testator proceeds: " I give, devise, and bequeath unto my executors hereinbefore named and the survivors and survivor of them, and the heirs, executors and assigns of such survivor, all the rest, residue and remainder of my estate real and personal, of which I may be seised and possessed, and to which I may be in any wise entitled at the time of my decease, and which I have not hereinbefore otherwise given, bequeathed and disposed of, with the appurtenances, to have and to hold the same unto my said executors and the survivors and survivor of them, and the heirs, executors, administrators, and assigns of such survivor, in trust nevertheless to and for the uses and purposes hereinafter mentioned, that is to say." In trust, inter alia, to let and demise real estate ; to collect rents and income ; to sell and convey real estate ; to permit Algemine D. Smith to occupy certain buildings during her natural life, the executors to pay the insurance and taxes thereon ; to invest the proceeds of real and personal estate, in safe and reliable securities ; to pay an annuity of $3,000 to Algemine D. Smith ; one of $800 to Caroline Derbyshire; another of $600 to Eliza Ann Henzsey ; and to Alexander J. Derbyshire, Jr., the sum of $1,000 " when he shall arrive at and if he shall live to the full age of twenty-one years ;" and in trust further, " and my said executors are hereby directed after the decease of the said Algemine D. Smith, Caroline Derbyshire, and Eliza Ann Henzsey, and of the said Alexander J. Derbyshire, Jr., before his arrival at the age of twenty-one years, to convey, assign, transfer, set over and pay unto the Contributors to the Pennsylvania Hospital, their successors and assigns, for the charitable uses of said institution, all the rest, residue and

remainder of my estate real and personal, and of the income, rents, issues, profits, and accumulations thereof which remain in the hands of my said executors unsold or undisposed of as aforesaid after the decease of the said Algemine D. Smith, Caroline Derbyshire, Eliza Ann Henzsey, and Alexander J. Derbyshire, Jr., as aforesaid, and after paying and discharging all my debts and funeral expenses, and all the annuities, legacies, bequests and sums of money hereinbefore and hereinafter devised and bequeathed, or directed to be paid, and after paying for and discharging all the charges, taxes, repairs, and insurance upon all my estate and property real and personal, and all the charges and expenses incident to the sale, management, and settlement of my estate and property as aforesaid, and as hereinafter mentioned." In a subsequent clause the testator declares, " that the said several legacies, annuities, bequests and sums of money hereinbefore directed to be paid, shall be paid out of the rents, income, issues, and profits of my estate, so far as the same will suffice, before any part of the capital or principal thereof shall be used for that purpose."

All the annuitants are still living, and Alexander J. Derbyshire, Jr., is under twenty-one years of age.

The residuary devise, being in trust for a charitable use and purpose, comes within the proviso to the 9th section of the Act of 18th April 1853, and therefore is not within the prohibitory clause of the section forbidding accumulations after the death of the testator, for a term longer than therein specified.

As the interest on the whole fund is found to be in excess of the sum required to pay all the annuities, the court ordered that a portion of the principal of the estate be now paid over to the hospital. This is assigned for error.

The portions of the will to which we have referred, show the whole estate, present and prospective, to be given to the executors upon trusts clearly defined. They are to hold and manage the whole estate existing at the death of the testator, and also the subsequent accumulations. They are to collect the rents and profits; sell lands; invest proceeds of lands and all unexpended funds coming to their hands: pay the taxes and insurance on the buildings devised to Algemine D. Smith, for her life, keep the same in repair, and in case of destruction by fire, rebuild them. The specific direction to invest the accumulations clearly assumes a probable increase of the estate, during the life of annuitants: yet there is no intimation either expressed or implied that prior to their death, any portion thereof shall be given to the hospital.

The transfer or payment to the hospital is not to be made in installments or at different times: but all at one time. It is not to be made until "after" the decease of the annu-

itants, and not until "after" payment of all charges, taxes, repairs and insurance: and not until "after" payment of all charges and expenses incident to the sale, management and "settlement" of the whole estate. "After" every other purpose of the trust has been fulfilled and satisfied—then, and not till then, the testator directs a transfer be made to the hospital. The trust is active during the life of the annuitants.

It is clearly manifest from the whole context of the will, that the testator intentionally used the word "after" to indicate the time when the hospital should enjoy his bounty. It was not to take subject to previous devises and annuities. The language did not relate to the death of the testator, and import a right to any enjoyment before the time designated, as in Lamb *v.* Lamb, 11 Pick. 371. That case, as well as Key *v.* Key, 4 De Gex, Mac. & Gov. 73; Franks *v.* Price, 3 Beavan 182; Massey *v.* Hudson, 2 Meriv. 130, and kindred cases do not apply to the language of the will now under consideration. The intent is so clearly expressed, that the authority of no adjudged case is necessary to give effect to its language. If any be desired, it may be found in Harbin *v.* Masterman, L. R. 12 Equity 559.

Why then shall the clear and explicit directions of the testator be disobeyed? His right to postpone the time when the hospital shall enjoy the fruit of his bounty cannot be denied. It is not in conflict with any principle of public policy, of religion or morality, and does not impinge on any statute. Full effect must, therefore, be given to the clear intent of the will: Bainbridge's Appeal, 1 Outerbridge 482.

Reasons satisfactory to the testator induced him to withhold all aid from the hospital until the time when the whole trust of the executors was to be determined. In giving construction to this will, we need not seek for the motive of the testator. It was not necessary for him to state it, and he has not. His beneficiaries have no right to inquire his reasons for giving at once to some, and after a long interval, to others. He may have thought it for the best interests of the hospital to withhold his aid, until he could give it the whole residuary fund of his large estate. He may have thought its future necessities would be greater than the present. In the absence of reasons stated by him, we must not conjecture some, and thereby prevent the reasonable and natural meaning of the language used. As was said in Bainbridge's Appeal, supra, the testator may have thought, as the good man of the house said to the laborer who complained of the inequality of payment, "is it not lawful for me to do what I will with mine own?"

It is of no consequence that we may think the testator might well have given a portion of his estate to the hospital on his death, or at some earlier period of time, than expressed in

[Commonwealth *ex rel.* Wolfe *v.* Butler.]

his will. He thought otherwise, and the opinion of others as to what he ought to have done, cannot be substituted for what he did do. His will must control. The language thereof is too clear to attempt to construe that which needs no construction. We think the learned judge erred in decreeing that a portion of the fund be now paid over to the Contributors of the Pennsylvania Hospital. They must abide their time.

> Decree reversed at the costs of the appellees ; and distribution is ordered to be made conformably with this opinion.