## Derbyshire's Estate.

Before Lamorelle, P. J., and Gest, Henderson, Van Dusen and Sinkler, JJ. The facts appear from the adjudication of

LAMORELLE, P. J., Auditing Judge. — Alexander J. Derbyshire, who died March 29, 1879, by the seventh item of his will, gave his executors and the survivors and survivor of them the residue of his estate in trust to pay Algemine D. Smith $4000 per annum for the period of two years, and to continue to pay said sum to her during the term of her natural life; to pay to his cousin, Caroline Derbyshire, $800 per annum for life; to pay to his cousin, Eliza Ann Henszey, $600 per annum for life; to pay to Alexander J. Derbyshire, Jr., $1000 when he should arrive at the age of twenty-one years; and after the decease of the said Algemine D. Smith, Caroline Derbyshire and Eliza Ann Henszey and of the said Alexander J. Derbyshire, Jr., before his arrival at the age of twenty-one years, "to convey, assign, transfer, set over and pay unto the Contributors to the Pennsylvania Hospital, their successors and assigns, for the charitable uses of the said Institution, all the rest, residue and remainder of my estate, real and personal, and of the income, rents, issues, profits and accumulations thereof which may remain in the hands of my said executors unsold or undisposed of as aforesaid after the decease of the said Algemine D. Smith, Caroline Derbyshire, Eliza Ann Henszey and Alexander J. Derbyshire Junior as aforesaid, and after paying and discharging all my debts and funeral expenses, and all the annuities, legacies, bequests and sums of money hereinbefore and hereinafter devised and bequeathed or directed to be paid, and after paying for and discharging all the charges,

taxes, repairs and insurance upon all my estate and property, real and personal, and all the charges and expenses incident to the sale, management and settlement of my estate and property as aforesaid and as hereinafter mentioned."

Algemine D. Smith and Eliza Ann Henszey, two of the annuitants named, are dead, and Alexander J. Derbyshire, Jr., has been paid his legacy of $1000 as provided by the will of testator.

Caroline Derbyshire, now Schelling, one of the surviving annuitants, executed a deed, whereby her annuity has been released, and attached hereto, marked "A," and made part hereof is a writing, signed by Caroline D. Schelling, in which she states, for an adequate consideration by her received, she releases and forever discharges The Provident Trust Company, substituted trustee, from all liability, claim and demand, charge or lien, on account of or by reason of the annuity of $800 per annum bequeathed to her under the item of the will above recited.

Malcolm Lloyd, Jr., was called as a witness, and he stated that he was a member of the Board of Managers of the Contributors to the Pennsylvania Hospital, and during the last year chairman of the finance committee; that the corporation is in debt to the extent of over $3,000,000 on which it is paying interest; and that if the trust were terminated there would be a saving to the institution per year of from $170,000 to $180,000.

The Auditing Judge is asked to terminate the trust and to award the balance of principal and income to the Contributors to the Pennsylvania Hospital.

This is the third time that this court has been asked to terminate the trust. On the first occasion the court was asked to set aside a sufficient sum for the purpose of paying the annuities and that the balance should be transferred to the hospital for the charitable uses of the institution. The orphans' court for this county made the decree asked for [38 L. I. 270, 11 W. N. C. 22], whereupon an appeal was taken by the executors to the Supreme Court, and that court reversed in Biddle's Appeal, 99 Pa. 525; and in doing so, used the following language: "Why then shall the clear and explicit directions of the testator be disobeyed? His right to postpone the time when the hospital shall enjoy the fruit of his bounty cannot be denied. It is not in conflict with any principle of public policy, of religion or morality, and does not impinge on any statute. Full effect must, therefore, be given to the clear intent of the will: Bainbridge's Appeal, 1 Outerbridge [97 Pa.] 482.

"Reasons satisfactory to the testator induced him to withhold all aid from the hospital until the time when the whole trust of the executors was to be determined. In giving construction to this will, we need not seek for the motive of the testator. It was not necessary for him to state it, and he has not. His beneficiaries have no right to inquire his reasons for giving at once to some, and after a long interval, to others. He may have thought it for the best interests of the hospital to withhold his aid, until he could give it the whole residuary fund of his large estate. He may have thought its future necessities would be greater than the present. In the absence of reasons stated by him, we must not conjecture some, and thereby prevent the reasonable and natural meaning of the language used. As was said in Bainbridge's Appeal, supra, the testator may have thought, as the good man of the house said to the laborer who complained of the inequality of payment, 'is it not lawful for me to do what I will with mine own?'

"It is of no consequence that we may think the testator might well have given a portion of his estate to the hospital on his death, or at some earlier period of time, than expressed in his will. He thought otherwise, and the opinion of others as to what he ought to have done, cannot be substituted for

what he did do. His will must control. The language thereof is too clear to attempt to construe that which needs no construction. We think the learned judge erred in decreeing that a portion of the fund be now paid over to the Contributors of the Pennsylvania Hospital. They must abide their time."

Thirty years later another attempt was made by the remainderman to secure an immediate award. At this time, 1913, some of the original trustees were still living but two of the annuitants had died. The third annuity was, however, in existence, the annuitant, Caroline D. Schelling, being alive and not having extinguished her annuity. Notwithstanding the fact that the surviving annuitant indicated a willingness to make such disposition of the annuity as would facilitate the wishes of the remainderman, the surviving trustees stood upon their right to retain the legal title and to continue the administration of the trust. A decree adverse to the contention of the remainderman [22 Dist. R. 153] was affirmed by the Supreme Court in Derbyshire's Estate, 239 Pa. 389; and in sustaining the action of the court below, the court quoted what was said in Biddle's Appeal, *supra*, as aforesaid.

Counsel for the Contributors calls attention to the fact that all the original trustees are dead and that Mrs. Schelling's annuity has ceased to exist by virtue of a valid extinguishment. The remainderman calls further attention to the fact that the corporate trustee, which has been substituted for the original trustees, is not insisting upon retention of the legal title but is willing to facilitate the immediate enjoyment of the residuary estate by the remainderman; he contends, therefore, that the trust has ceased to be an active one and that the only possible reason for continuing the same would be to enable the substituted trustee to earn and collect commissions which it does not claim. He contends, further, that the matter before the court is not *res adjudicata* and that a new situation is presented; that it is inconceivable that the testator intended further to postpone enjoyment after the death of all the trustees and the termination of all the annuities; and that it would seem to be an ideal case for the application of the doctrine of acceleration. He further calls attention to the Act of April 14, 1931, P. L. 29, providing for the acceleration of vested remainders to literary, scientific, charitable or religious corporations or associations. That act provides, *inter alia*, that the court may decree the termination of a trust where testator has directed the payment of an annuity or annuities, with vested remainder to a corporation or association formed for literary, scientific, charitable or religious purposes, if it be made to appear to the court that all parties in interest in said trust, still living or in corporate existence, have agreed that the trust be settled and ended upon terms mutually satisfactory to them. This act does not apply because testator died many years before its passage; nor does the Auditing Judge understand that there is any contention that it does. It might be noted that there is a proviso to the act which states that it shall not apply where testator shall have declared his purpose to create by accumulation a fund for the benefit of a literary, scientific, charitable or religious corporation or association. Counsel contends that the proviso is inapplicable because accumulation in the instant case was not the primary purpose of the testator but a mere incident to the inadequacy of the annuities to exhaust the income.

The court is earnestly requested to terminate the trust because all parties in interest consent to an immediate award and because no one can possibly be aggrieved by such a decree.

The Supreme Court has on two occasions emphatically stated that the time for the enjoyment of the principal was fixed at the death of the survivor of the annuitants and that distribution cannot be made prior thereto; that the testator, for reasons best known to himself, has fixed that as the time; that if

a different time were substituted, it would be prior to the expressed direction of the testator; and that the direction of the testator must be obeyed. In the opinion of the Auditing Judge, the matter is *res adjudicata*. The conditions, it is true, have changed, but the Auditing Judge has found by the decision of the Supreme Court that there can be no acceleration of the remainder interest, and he, therefore, declines to terminate the trust.

*George Wharton Pepper*, for exceptant; *Howard H. Yocum*, contra.

HENDERSON, J., December 14, 1931.—The facts are fully set out in the adjudication and need not be repeated.

Under the facts as they existed at the time of the death of the testator (1879), and again in 1913, our Supreme Court declined to terminate the trust for accumulation for this charity. The fund has grown from about $300,000 to about $3,000,000, which is vested in remainder in the hospital free from all trusts except the proper uses of the corporation.

The Act of April 14, 1931, P. L. 29, empowers the court where everyone requests it to terminate the trust, and in terms it seems to apply to the state of facts as they now exist. The Auditing Judge has ruled that the act does not apply because the testator died many years before its passage.

The exceptant contends that it does apply and the corpus and accumulations should be awarded to the hospital.

The question is, therefore, presented—can the legislature retrospectively empower the court to terminate this trust? If it can, the exceptions should be sustained.

At the outset, it should be recalled what was so well stated by Chief Justice Waite in Munn *v.* Illinois, 94 U. S. 113, 123:

"Every statute is presumed to be constitutional. The courts ought not to declare one to be unconstitutional, unless it is clearly so. If there is doubt, the expressed will of the legislature should be sustained."

And, again, at page 132, he said:

"Of the propriety of legislative interference within the scope of legislative power, the legislature is the exclusive judge."

What is the source of the power of the legislature? Quoting again from the opinion of the learned Chief Justice in Munn *v.* Illinois, he said (p. 124):

"When the people of the United Colonies separated from Great Britain, they changed the form, but not the substance, of their government. They retained for the purposes of government all the powers of the British Parliament, and through their State constitutions, or other forms of social compact, undertook to give practical effect to such as they deemed necessary for the common good and the security of life and property. All the powers which they retained they committed to their respective States, unless in express terms or by implication reserved to themselves. Subsequently, when it was found necessary to establish a national government for national purposes, a part of the powers of the States and of the people of the States was granted to the United States and the people of the United States. This grant operated as a further limitation upon the powers of the States, so that now the governments of the States possess all the powers of the Parliament of England, except such as have been delegated to the United States or reserved by the people. The reservations by the people are shown in the prohibitions of the constitutions."

The books are full of retrospective legislation. The Act of May 9, 1889, P. L. 173, saving charitable gifts from failure, expressly provides: "That no disposition of property heretofore or hereafter made for any religious or charitable use, shall fail . . ." etc.

The Act of May 23, 1895, P. L. 114, amending the Act of April 26, 1855, so as to extend the provisions of said act to dispositions of property made prior to the passage of said act, provides: "That no disposition of property heretofore or hereafter made for any religious, charitable, literary or scientific use shall fail. . . ." etc.

The legislature may not retrospectively legislate on penal matters nor impair the obligation of contracts; neither is attempted in the instant case.

In Weister et al. *v.* Hade et al., 52 Pa. 474, 481 (1866), our Supreme Court said:

"These cases establish two things: first, the power of the legislature to legislate retrospectively in all matters not penal, not violative of contracts and not expressly forbidden by the Constitution; second, to act directly upon individual rights."

In Swartz *v.* Carlisle Borough, 237 Pa. 473, 478 (1912), it said:

"It is settled law in Pennsylvania that the legislature has the power to legislate retrospectively on all matters, not penal, nor in violation of contracts, not expressly forbidden by the Constitution."

In Towanda Borough *v.* Fell, 69 Pa. Superior Ct. 468 (1918), our Superior Court said:

"It is the law of Pennsylvania that the legislature has the power to legislate retrospectively on all matters, not penal nor in violation of contracts, not expressly forbidden by the Constitution."

While the propriety of such legislation is entirely for the legislature, the public policy involved should not be overlooked in these times of economic stress. It was the intention of the General Assembly that this great fund for hospital relief of the community should be immediately made available to the public.

The Act of April 14, 1931, is one declaring a public policy; it may be conceded that if it had been on the statute books at the time this will became operative the public policy therein declared would have been followed; what could have been done prospectively may be done retrospectively, there being no violation of a contract nor of a penal matter.

To summarize—we find the question involved is not *res adjudicata;* that the Act of April 14, 1931, P. L. 29, applies in terms to the instant trust; that the act is within the power of the legislature; that there is no constitutional prohibition of the subject matter of this act; and that under the act this court, in the exercise of the discretion conferred, should terminate the trust.

The exceptions are sustained and the trust terminated, and the entire fund, principal and income, is awarded to the Contributors to the Pennsylvania Hospital.

VAN DUSEN, J., concurs in this opinion.

SINKLER, J., concurring.—The final proviso of section nine of the Act of April 18, 1853, P. L. 503, as amended by the Act of April 14, 1931, P. L. 29, enacts that the preceding proviso shall not affect the termination of a trust if, in the instrument creating it, the testator shall have declared his purpose to accumulate a fund for the benefit of, among others, a charitable corporation, and shall also have specified (1) the number of years during which the accumulation shall continue, or (2) a sum to be accumulated, or (3) a particular object to be accomplished for which the trust fund is not yet sufficient.

The testator must, in unmistakable language and not by implication, express his intention to accumulate for one of these three ends.

The will of Alexander J. Derbyshire does not, in express terms, direct an accumulation either for a designated number of years, or until a certain sum

has been amassed, or to accomplish a particular object for which the trust fund was insufficient.

Since no one of the three exceptions set forth in the final proviso of the amended act is present, the penultimate proviso is applicable. The essential conditions thereof have been met. The will creates annuities with a vested remainder in a corporation formed for a charitable purpose. The interests of the sole surviving annuitant have been acquired by the corporation holding the vested interest in remainder.

The Auditing Judge has found that the Act of April 14, 1931, does not apply to the present case because the testator died many years before its passage and because he does not understand there is any contention that the act does apply. The first exception to his adjudication is directed to this finding. The argument before the court *in banc* in support of this exception is that the Act of April 14, 1931, is constitutional and is applicable to the present case.

With the conclusion of Henderson, J., upon this question and the grounds upon which he bases his conclusion, I concur.

GEST, J., dissenting.—I dissent from the opinion of the majority of the court with very great regret, as my sympathy is with the Pennsylvania Hospital, one of our noblest charities, but I should not allow my sympathy to control my legal judgment. In my opinion, this is not a case where we can apply the recent Act of April 14, 1931, P. L. 29.

When the case came before the court for the first time over fifty years ago, the hospital asked that the sum of $125,000 be set aside to secure the payment of the annuities then existing, amounting to $5400 per annum, and that the remainder of the personal estate, said in the report to be $95,547.49 (which seems to be an error for a much larger amount), be awarded to the hospital, and this court so decreed in an opinion by Ashman, J. [38 L. I. 270, 11 W. N. C. 22.] The executors took an appeal to the Supreme Court, and on October 5, 1882, that court, Sharswood being then Chief Justice, reversed this court in an opinion by Mr. Justice Mercur, in which it was said (Biddle's Appeal, 99 Pa. 525, 533): "The portions of the will to which we have referred, show the whole estate, present and prospective, to be given to the executors upon trusts clearly defined. They are to hold and manage the whole estate existing at the death of the testator, and also the subsequent accumulations. They are to collect the rents and profits; sell lands; invest proceeds of lands and all unexpended funds coming to their hands: pay the taxes and insurance on the buildings devised to Algemine D. Smith, for her life, keep the same in repair, and in case of destruction by fire, rebuild them. The specific direction to invest the accumulations clearly assumes a probable increase of the estate, during the life of annuitants: yet there is no intimation either expressed or implied that prior to their death, any portion thereof shall be given to the hospital.

"The transfer or payment to the hospital is not to be made in installments or at different times: but all at one time. It is not to be made until 'after' the decease of the annuitants, and not until 'after' payment of all charges, taxes, repairs and insurance: and not until 'after' payment of all charges and expenses incident to the sale, management and 'settlement' of the whole estate. 'After' every other purpose of the trust has been fulfilled and satisfied—then, and not till then, the testator directs a transfer be made to the hospital. The trust is active during the life of the annuitants."

The twelfth account of the trustees was filed in April, 1912. All of the annuitants had died, except one, who was Mrs. Caroline Schelling. She had

agreed with the hospital to release her annuity upon payment to her of $25,000, and the joint petition of Mrs. Schelling and the hospital was presented, asking that the trustees, upon the execution of her release, assign and transfer the whole of the trust estate to the hospital. It was there said in the adjudication of the Auditing Judge:

"The real question in the case is whether the testator postponed the final distribution of the estate until a definite, fixed time, to wit, the death of all the annuitants, for their protection or whether he intended that his estate should accumulate for the benefit of the hospital until the happening of that event."

It was further said:

"There is no tangible distinction, so far as the present question is concerned, between the facts as they existed when Biddle's Appeal was decided and those that are now presented."

Exceptions were dismissed by the court *in banc* [22 Dist. R. 153], and an appeal therefrom was taken to the Supreme Court. The personnel of the Supreme Court had entirely changed in the meantime, and the court, as then constituted, filed a *per curiam* opinion, 239 Pa. 389, reiterating its former views.

The present account is filed by Provident Trust Company, as substituted trustee, and the estate has grown to $3,000,000. Caroline Schelling, being now, as she was in 1912, the only surviving annuitant, has executed a deed by which, for an adequate consideration by her received, she released and discharged the trustee from all claims and demands by reason of her annuity of $800.

This case has been tried by fire and twice refined in the crucible of the Supreme Court, which, in its decisions above cited, has clearly and emphatically construed the will of this testator. According to this construction, the testator directed his trustees "to hold and manage the whole estate existing at his death, and also the subsequent accumulations" until the death of all of Algemine D. Smith, Caroline Derbyshire and Eliza Ann Henszey, who are mentioned *nominatim,* and it was further said that there is no intimation, either express or implied, that prior to their deaths any portion of the estate shall be given to the hospital. For over fifty years this has been the settled construction of the testator's will.

The situation now is precisely the same in legal effect as it always has been, for we do not agree with the argument of the learned counsel for the hospital that the death of all the original trustees makes any difference.

Has this court now the right, under the recent Act of April 14, 1931, P. L. 29, to exercise any discretion in the matter and terminate the trust?

In my opinion we have not. It may be granted that the legislature has, in general, power to pass retroactive legislation, although Chief Justice Gibson said in Greenough *v.* Greenough, 11 Pa. 489: "All *ex post facto* laws are arbitrary; and it is to be regretted that the constitutional prohibition of them has been restricted to laws for penalties and prohibitions," and Judge Sharswood said in Taylor *v.* Mitchell, 57 Pa. 209: "Retrospective laws generally if not universally work injustice, and ought to be so construed only when the mandate of the legislature is imperative."

The Acts of May 9, 1889, P. L. 173, and May 23, 1895, P. L. 114, relative to charitable gifts and the *cy pres* doctrine, were intended to carry out the charitable purposes of a testator, and not to defeat them. Such retroactive statutes may, therefore, properly be sustained. None of the cases cited in the opinion of the majority of the court approve of retroactive legislation at all resembling that involved in the present case.

My objections in the present case are twofold. First, as is said in Cooley on Constitutional Limitations, 190: "Legislative action cannot be made retroactive upon past controversies and to reverse decisions which the courts in the exercise of their undoubted authority have made," and, as is stated in Black, Constitutional Law, 88: "When litigation has proceeded to a judgment which determines the controversy on its merits, it is beyond the power of the legislature to alter or control it, hence that body cannot vacate or annul a final judgment, nor in any way invalidate or set it aside, *nor empower the court to do so*," citing, among other cases, De Chastellux *v.* Fairchild, 15 Pa. 18. This, to be sure, concerned a special act of assembly, granting a new trial in a case decided by the Supreme Court, but, as was said by Gibson, C. J., in Greenough *v.* Greenough, 11 Pa. 489, a general law may impinge on particular rights. Baggs's Appeal, 43 Pa. 512, is another similar case. And in McCabe *v.* Emerson, 18 Pa. 111, after a judgment had been affirmed by the Supreme Court, the Act of March 22, 1850, P. L. 230, general in its terms, authorized another writ of error to be taken by the other party to the litigation. The Supreme Court held that the statute was beyond the power of the legislature, and in my opinion, the Act of April 14, 1931, in its application to the present case, is likewise.

Secondly: It is claimed by the learned counsel for the exceptant in his able and eloquent argument—and I quote the language of his paper book: "The Pennsylvania Hospital is now alone interested in the estate. The trustee joins with the remainderman [the hospital] in requesting the termination of the trust." And again: "Since the release of her legacy by Caroline Derbyshire· Schelling, The Pennsylvania Hospital alone has any property rights under the will." This argument ignores the important fact that in the prior decisions of this case the estate was awarded to the trustee under the will, who holds the title thereto for the uses and purposes of the trust, as that trust has been construed by the court. The trustee's right to hold the estate implies a correlative duty to do so, that is, to hold and accumulate the estate until the death of the survivor of the four persons named in the will. This is a duty, and an imperative duty, which the trustee cannot avoid by agreeing to the termination of the trust. Were this not so, no trust would be safe. See Mead *v.* Sherwin, 275 Pa. 146, 156. In Snyder's Estate, 274 Pa. 574, where the executor and trustee did not defend the trust, but stated "we have nothing to offer in defense," the court below appointed, *suo motu*, a trustee *ad litem*, and this was approved by the Supreme Court. Stoffel's Estate, 295 Pa. 248, is a recent and cogent authority, where the Supreme Court said that a testator in Pennsylvania "may die with the justifiable conviction that the courts will see to it that his dispositions, legally made, are not departed from by those charged with the duty of performance, or improperly defeated by agreement between those upon whom he bestowed his bounty."

Aside from what has been said above, and assuming that all the provisions of the Act of April 14, 1931, are applicable to this case, it will be observed that it provides: "Said court may . . . decree that the trust be settled and ended," etc. The power of this court at most is purely discretionary, and, in my opinion, this court should not exercise such discretion unless the Supreme Court, whose prior decisions will be set aside, should decide in the appeal, which should certainly be taken in this case, that we have the right to do so.

I would dismiss the exceptions to the adjudication.

LAMORELLE, P. J., concurs in this opinion.