George W. Stockett, Executor of the Last Will and Testament of Joseph Fraley, deceased, and Wellington Fraley, a son of Joseph Fraley, and Devisee under said Will, Appellant, *v.* I. H. Ryan.

*Trusts and trustees—Deed of trust—Settlement by man of intemperate habits—Findings of court below—Equity.*

The findings of a court of common pleas, sitting as a court of equity, that a deed of trust executed voluntarily, without any coercion or undue influence, with a full knowledge of its contents and the legal effect of it, by a man of intemperate habits who was wasting and mismanaging his estate, and who executed it for the purpose of protecting himself and his estate from the consequences of his improvident and intemperate habits, making himself and his children the only beneficiaries, fully justified the decree dismissing the bill for the cancellation of the deed. While the findings are not absolutely binding upon the Supreme Court, yet until error in them is clearly shown they will be allowed to stand.

Argued May 18, 1896. Appeal, No. 42, July T., 1895, by plaintiff, from decree of C. P. Lancaster Co., Equity Docket No. 3, p. 87, sitting in equity. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity for the cancellation of a deed of trust.

The case was heard upon bill, answer and proofs, and Livingston, P. J., filed the following opinion:

This proceeding originated in, and arises out of, a certain deed of trust, of which the following is a copy:

"This indenture, made the tenth day of July, A. D. 1890, between Joseph Fraley, of the city of Lancaster, in the county of Lancaster and state of Pennsylvania, of the one part, and I. H. Ryan, also of the said city of Lancaster, of the other part, Witnesseth: That the said Joseph Fraley, for and in consideration of the sum of one dollar, unto him in hand, paid by the said I. H. Ryan, at and before the ensealing and delivery hereof, the receipt whereof is hereby acknowledged, and for the purpose of preserving his property and estate for the support of himself and the future benefit of his children, hath granted, bargained, sold, assigned, transferred and set over, and doth hereby grant, bargain, sell, assign, transfer, and set over, unto the said I. H. Ryan, his heirs, executors, administrators and assigns, all the real estate of which he, Joseph Fraley, is now seized or possessed, or in any manner entitled to, whether in possession, remainder or reversion, and wheresoever situate, and all his right, title and interest therein; and also all his personal property, goods, chattels and credits of every description whatever, or wheresoever the same are or may be found: To have and to hold, receive and take the same and every part thereof, to him, the said I. H. Ryan, his heirs, executors, administrators, and assigns, to the only proper use and behoof of him, the said I. H. Ryan, his heirs, executors, administrators, and assigns. In trust, nevertheless, that he will collect all outstanding debts and credits due to him the said Joseph Fraley; that he will sell and convert into money all his personal property; that he will sell and convey said real estate in fee simple, or for such other estate as he, the said Joseph Fraley, now hath therein, at such time or times, and altogether, or in such part or parts as he may see fit, and that until such sale or sales, he will rent the same, and collect and receive the rents, issues and profits thereof; that he will from the proceeds of said personal property, and the rents, issues and profits of said real estate, and the

proceeds thereof when sold, first fully pay and discharge all the just debts now due or owing by or from the said Joseph Fraley; that he will invest the balance thereof then remaining at interest in such good securities as he may approve, and with power from time to time to change such investments as he may see fit, and collect and receive the interest arising therefrom; that he will apply the said rents, issues and profits, and the interest arising from said investments, and also so much of the principal thereof as he may think necessary and proper from time to time, and as often, and in such manner and in such proportions as he, in his discretion, may think right and best, to the comfortable support of him, the said Joseph Fraley, and further, shall pay to Mary Brillhart, his daughter, ten dollars per year during the lifetime of the said Joseph Fraley, so that neither the said real estate or personal property, or the rents issues and profits, interest or income arising therefrom, or any part thereof, shall or may at any time hereafter be liable or subject, in any manner whatever, to the control, engagements, debts or liabilities of him, the said Joseph Fraley; and that he will, as soon as conveniently may be after the death of the said Joseph Fraley, sell and convey the said real estate, if the same or any part thereof then remain unsold, and shall also collect and receive the principal amount of said investments, and from any unexpended interest or income then remaining in his hands, shall pay the expenses of the decent and proper interment of him, the said Joseph Fraley, and that he will then pay and distribute the whole remaining balance of the said trust fund remaining in his hands as follows: To my son Charles W. Fraley, one dollar; one-fourth of the remainder to my daughter Sarah Jane Musselman, less however the sum of two hundred dollars already advanced to her, the interest of the said one-fourth share to be paid to the said Sarah Jane during her lifetime, and after her death the said share to be equally divided between her two sons, Wellington and Edward. The interest of one-fourth share of the balance, less one hundred dollars advanced to him, to my son Wellington Fraley during life, and after his death to my daughters, Mary Brillhart and Florence Stockett. One-fourth share to each of my daughters, Mary Brillhart and Florence Stockett.

" In witness whereof, the parties to these presents have inter-

changeably set theirs hands and seals, the day and year above
written.

                               his
                    " JOSEPH  ✕  FRALEY. [SEAL.]  ·
                               mark

" Written in presence of
        " A. H. FRITCHEY,
        " P. DONNELLY.

" LANCASTER COUNTY, *ss.* :

" Before me the subscriber, a justice of the peace in and for
said county, personally came the within named Joseph Fraley,
and acknowledged the within and foregoing indenture to be his
act and deed, and desired that the same might be recorded as
such.

" Witness my hand and official seal, this tenth day of July,
1890.                            " P. DONNELLY, [SEAL.]
                                        " Alderman.

" I hereby accept the within trust.
" Signed the day and year above written.

                                   " I. H. RYAN.
" Written in presence of
        " A. H. FRITCHEY.

" Recorded in the office for recording of deeds, etc., in and for
Lancaster county, Pennsylvania, in record book N. volume 13,
page 521, etc.

" Witness my hand and seal of office, this tenth day of July,
A. D. 1890.              D. E. BITNER, [SEAL.]
                                   " Depty Recorder."

After the execution, delivery and acceptance of this deed of
trust, the trustee called on Mr. Fraley's banker, or at the bank
where Mr. Fraley made his deposits and kept an account; and
the banker says, " demanded Mr. Fraley's money, and told me
he had appointed him as trustee." On receiving his informa-
tion, the banker at once called on his own counsel, without call-
ing on Mr. Fraley, and without authority from him, and told
his counsel " that such a deed had been executed by Mr. Fra-
ley under misapprehension, and he desired to have it revoked
whether it could be done ; " and so far as the preparation of the
paper was concerned, everything was done without any consul-
tation with Mr. Fraley, and wholly under direction of the

banker; the counsel did not know Mr. Fraley. He was called upon by the banker to draw up such an instrument of revocation. He went to the recorder's office, and found the deed of trust there on record; he examined it, and he " drew up the revocation," as he was directed to do.

After the banker had seen his attorney and directed him to prepare the deed of revocation, and without seeing the deed of trust, he went to see Mr. Fraley and " explained to him what he (Fraley) had done. He was very much surprised and said that wasn't his intention, that he didn't want anybody to have his money." "He called on Mr. Fraley to see what he had to say about it. He was very much surprised that that was what he had done, disposing of his property, as his property was being disposed of pretty freely by the folks around the house." " His tools and material he had in his shop had all been carried off and he didn't want anybody to have anything further to do with his affairs but himself."

The banker " explained to him that he could revoke that deed of trust made to Mr. Ryan, and he said he wished to do it." The banker then left him and again called on his counsel, and took him up, and he explained it to Mr. Fraley, and the deed of revocation was, as we have stated, executed, and placed on record.

The banker's counsel had prepared, or there prepared, the following notice, which was signed by Mr. Fraley:

" To I. H. RYAN:

" You are hereby notified that the deed of trust dated July 10, 1890, and executed by me, purporting to convey all my property, real and personal, to you upon certain trusts therein declared, has been revoked by me by deed of revocation of this date duly executed and recorded.

" You are therefore notified not to attempt to exercise any control over any of my property, nor interfere in any of my affairs by virtue of said deed.

" Lancaster, July 10, 1890.

his
" JOSEPH $\times$ FRALEY.
mark

" Witnesses present :
" A. K. SPURRIER,
" WALTER MYERS.

"INDORSED.

"LANCASTER, PA., July 11, 1890.

"Served the within on I. H. Ryan, personally, by making known to him the contents thereof, and by leaving a copy with him.   So answers on oath.

"E. EICHOLTZ.

"Affirmed and subscribed the 11th day of July, 1890.

"A. K. SPURRIER,

"Alderman."

After this deed of revocation and service of notice, Mr. Ryan proceeded to act as trustee under the said deed of trust, and continued so to act until the death of Joseph Fraley, on or about August 10, 1894.    Ascertaining that there was an account at the banker's, but not knowing whether Mr. Fraley had credit or not, and not being able to ascertain, brought suit against the banker and obtained a judgment of over $3,000 in his favor, which the banker paid to him as trustee, the money having been deposited by Mr. Fraley.

After the death of Mr. Fraley, a will which he had executed on October 23, A. D. 1886, came to the possession of his son-in-law George Stockett, the executor therein named, who proceeded to have it probated and letters testamentary issued to him by the register of wills of the county of Lancaster.

He then, as executor, demanded of Mr. Ryan, the trustee, the money, deeds, title papers, notes and all the property belonging to the estate of Joseph Fraley.    Mr. Ryan, the trustee, declined to deliver them to him.

After which, on September 15, 1894, complainants entered and filed their bill of complaint.

From the bill, answer, papers presented and testimony taken, we find the following facts :

1. That Joseph Fraley executed the deed of trust dated July 10, 1890, and marked "exhibit A" in defendant's answer, voluntarily, without any coercion, intelligently and with a full knowledge of its contents and of the legal effect and operation of the same, and that it was to be irrevocable.

2. That Joseph Fraley was a man of intemperate habits, and prior to the execution of the said deed of trust was by reason thereof wasting and mismanaging his estate and permitting the

same to be wasted by others, and that he executed this deed of trust for the purpose of protecting himself and his estate from the consequences of his improvident and intemperate habits.

3. We find no evidence of any fraud, neglect, undue influence or intimidation being used to secure the making or execution of the deed of trust by Joseph Fraley to I. H. Ryan.

4. We find that the creation of a trust, such as is contained in this deed of trust, was rendered necessary by the intemperance of the settler, Joseph Fraley, and that it was executed by him for the purpose of preserving his estate for his own benefit during life, and of disposing of it among his family, in accordance with his wishes, after his death.

5. We find that the execution of this deed was not connected with any suspicious circumstances, was wholly uninfluenced, actually, presumptively or otherwise, by any relations existing between the maker and the trustee, and that the only parties to be benefited by it were the settler and his children, being the same parties named as the beneficiaries of his will, and conveying to them substantially the same interest as they would have taken and received under his last will and testament.

6. We find that the deed of trust was executed by Joseph Fraley in the presence of a member of the bar and also of an alderman, both of whom explained to him the contents of said deed and its full force and effect, and to whom and in whose presence he declared that he was fully satisfied therewith, that he understood the force and effect thereof, and desired that its provisions should be carried out.

7. We find that Joseph Fraley was induced to execute the deed, or power of revocation, dated July 10, 1890, not by any of his family or relatives, but by the representation of Charles H. Locher (who had not then seen the deed of trust) ; that he, Joseph Fraley, by the deed of trust, had disposed of his estate and had put it out of his hands, when at that time Locher had not examined the deed of trust, nor was he acquainted with its contents, had no knowledge thereof, except that he had been told that Mr. Ryan had been appointed as trustee and had called at his bank to inquire about Mr. Fraley's bank account; and that after the execution of the said deed of revocation thus obtained, neither Joseph Fraley nor I. H. Ryan, the trustee, paid any attention to or took any notice of its contents, or in any

manner recognized its existence, but proceeded with the business required by the trust, under and by virtue of the deed of trust, until the death of said Joseph Fraley.

We find the law to be that where, as in the present case, Joseph Fraley being an aged man, a widower, residing alone, his family having left him, having complete ownership and dominion over his own property, had the undoubted right to assign, transfer and convey the whole of it, real, personal and mixed, or any part thereof, unto I. H. Ryan, the defendant, as trustee, without reservation, and without any consideration whatever, upon such uses and trusts as to him might seem proper for the benefit of himself and his children, provided it be not prejudicial to the rights of his creditors : Merriman v. Munson, 134 Pa. 114.

That the title of the trustee, I. H. Ryan, under the deed of trust is complete and was irrevocable by Joseph Fraley, the settler, although the transaction was purely voluntary, and the fact that the grantee reserved an interest during life in the proceeds of the property, and gave a future benefit to other persons he named, gives no implied right to revocation. It contravenes no rule or policy of law, but executes the intention of the grantor. That when the creation of such a trust as the present has been rendered necessary by the folly and extravagance of the settler, and he has voluntarily and intelligently executed such a deed, equity will not set it aside, though it convey practically his whole estate, without reserving any power of revocation, or of support for himself beyond his incidental rights as a member of his wife's family. It appearing from the deed of trust in this case that it vested in Mary Brillhart a right to $10.00 per year, during the lifetime of said Joseph Fraley, such interest operated to make this deed of trust irrevocable. And where a deed conveys, as this one does, a present interest for life to the grantee, the fact that it contain provisions to take effect by way of contingent remainder upon the death of the grantor, during the life of the grantee, does not convert it into a will or make it testamentary. Such limitation cannot be revoked by the grantor, or by operation of law for life, even upon his subsequent marriage : Fellows' App., 93 Pa. 470; Merriman v. Munson, 134 Pa. 114; Ritter's App., 59 Pa. 9; Brown v. Mattocks, 103 Pa. 16–21.

Therefore, the deed of trust before us, having been voluntarily, intelligently and understandingly executed by Joseph Fraley, it was irrevocable, and was not revoked, either by the so-called deed or power of revocation, or by the will here produced, but remains in full force, and will so remain until all the purposes for which it was executed shall be fully accomplished by the settlement and distribution of the estate by the trustee as therein directed.

This cause coming on for trial at this, the March term, before this court, in the presence of counsel for plaintiffs and defendant; upon reading of the bill, answer, deed of trust, deed of revocation and notice, witnesses being produced by both parties, and being present, their examination was had and testimony heard orally; and upon hearing all the evidence, and what was alleged by counsel on both sides, this court doth adjudge, order and decree that complainants' bill of complaint be dismissed, and that complainants shall pay the costs of this proceeding with the reasonable costs of defendant.

*Error assigned* was decree dismissing bill.

*B. F. Davis* and *Wm. R. Wilson*, for appellant.—An instrument in any form, whether a deed, poll or indenture, if the obvious purpose is not to take effect till after the death of the person making it, operates as a will: Habergham v. Vincent, 2 Ves. 204; Hunt v. Hunt, 4 N. H. 434; Morrell v. Dickey, 1 Johns. Ch. 153; Frew v. Clarke, 80 Pa. 178; Frederick's App., 52 Pa. 338; Rick's App., 105 Pa. 528; Dennison v. Goehring, 7 Pa. 175; 1 Jarman on Wills, 18; Miskey's App., 107 Pa. 611; Russell's App., 75 Pa. 269.

The authorities on which the court below seem to base their decree are not parallel with or to the case in hand: Brown v. Mattocks, 103 Pa. 16; Ritter's App., 59 Pa. 9; Fellow's App., 93 Pa. 470; Merriman v. Munson, 134 Pa. 114.

*Charles I. Landis* and *W. U. Hensel, A. H. Fritchey* with them, for appellee.—The deed of trust was irrevocable: Merriman v. Munson, 134 Pa. 114; Fellow's App., 93 Pa. 470; Ritter's App., 59 Pa. 9; Frederick's App., 52 Pa. 338; Rick's App., 105 Pa. 528; Brown v. Mattocks, 103 Pa. 16.

PER CURIAM, May 28, 1896:

The findings of fact made by the learned judge sitting as a chancellor in this case fully justify the decree appealed from. These findings are not absolutely conclusive upon us, but until error in them is clearly shown, they should be allowed to stand. We have examined the evidence with a view to satisfy ourselves whether these findings can be fairly made from it, and we are not persuaded that any one of them should be overturned. The decree is affirmed.   Costs to be paid by the appellant.