## Denlinger v. Denlinger.

*Deeds—Trusts and trustees—Irrevocable deed—Absence of fraud.*

Where a person by a voluntary deed of trust without power of revocation conveys all of his property, real and personal, to a trustee without any fraud, coercion or undue influence and with full knowledge of its contents and legal effect, and with a provision in the deed for the maintenance out of income of the settlor and his wife for life, and then over, the court will not set aside the deed at the instance of the settlor.

Bill for reconveyance of property. C. P. Lancaster Co., Equity Docket 7, page 115.

*Charles W. Eaby*, for plaintiff.

*H. Frank Eshleman* and *I. C. Arnold*, for defendant.

### Findings of fact.

LANDIS, P. J., July 25, 1925.—On Oct. 2, 1922, Harry Denlinger, the plaintiff, in consideration of the sum of $1 "and for and in consideration of the acts, performances and purposes to be done and carried out by the second party," granted and transferred to the said Noah Denlinger, one of the defendants, "all his, the said first party's, real estate of every kind and description in said Paradise Township, said county and elsewhere, and whether in possession or otherwise, and also all his, the first party's, personal property and estate of every kind, including all cash, chattels, all mortgages, judgments, certificates of deposit, all certificates of stock of any corporation, and all manner of bonds, corporate, municipal, county, state or national, and all private corporations, and all evidences of moneys and rights outstanding, . . . in trust that he (the trustee) shall and do collect and take over all my said estate, real, personal and mixed, . . . and do cause the real estate to produce proper annual rent or income, and do cause all of any said personal property to produce interest, dividends, income and profits, and take, collect and get in said rents, interest, dividends, income and profits and keep my said real estate and personal property invested and reinvested at all times, and from time to time, as the said rents, interests, dividends, income and profits of every kind accrue, and, after deducting proper and lawful

Denlinger *v.* Denlinger.

taxes, repairs, insurance and expense of maintaining his trust, to pay out of the net rents, interest, income, dividends, proper support and maintenance of myself and my family as may be necessary in the wise and sound discretion of my said trustee and his successors, in trust, for and during the term of my natural life, and to see to it that I and they receive such benefit of the said rents, incomes, interest, profits, dividends and profits as shall be right and proper, at all times keeping in mind the size and nature of my estate, . . . and if the said rents, incomes, dividends, interests, profits, etc., be not sufficient for the said purpose, then to use of and from the *corpus* of the same, real and personal, such amounts as in his wise and sound discretion . . . may be necessary for the said objects." He also provided that, after his death, his trustee should collect all of his remaining estate, and, after paying his funeral expenses, &c., should pay one-third of the net balance to his wife and the remaining two-thirds to his children when they reach the age of twenty-one years, &c. No power of revocation was contained therein.

The plaintiff had, before the execution of this deed, been declared of weak mind, and a guardian was duly appointed over his person and estate by the Court of Common Pleas. He, however, recovered, and, under an order of the court, a reconveyance was made to him of his property. Some time after this was done, he was again threatened with the same trouble; but while he was yet in sound mind, his brother Noah, one of the defendants, at his request, notified H. Frank Eshleman, Esq., a member of this bar, to come down to his house to see him. The deed was prepared by Mr. Eshleman and he signed it. Mr. Eshleman testified that he read the whole of the deed over in his presence and asked him whether he understood it, and he replied that he did and that that was what he wanted. The plaintiff did not pretend that his mind was at all impaired at the time he executed the deed, but he testified that only a few of the sentences were read over to him and that he understood that when he recovered, his property was to be retransferred to him. It is admitted that, after the plaintiff signed the deed, he was taken to a sanitarium, where he remained for some time.

We find as a fact that there was no misreprestation made to him, either before or at the time he signed the deed; that it was fully read over to him; that he expressed his assent thereto; and that at that time he had a full knowledge of its contents. We, however, also find that, at the time this bill was filed, he was of sound and disposing mind and understanding.

### Conclusions of law.

It is not alleged in the bill that there was any fraud or misrepresentations made by any one at the time the deed was executed. All that is claimed is that "the plaintiff was suffering from mental and physical disorders to such an extent that he was advised to relieve himself of all business cares until he had recovered from his ailments." It will be observed that even the name of the person who gave this advice is not mentioned in the bill. The sole question, therefore, raised is whether from the deed of trust itself it can be declared revocable. The property conveyed by the deed of trust, as stated in the findings of fact, was to be held and invested by the trustee for the proper support and maintenance of the said Harry Denlinger and his family during the term of his natural life, and at his death the net proceeds of the trust fund were to be divided, one-third to his wife and the remaining two-thirds to his children, and in case he should leave no children, then the same was to go in such manner as if he had died intestate.

Denlinger v. Denlinger.

In Potter v. Fidelity Insur. Co., 199 Pa. 360, Mr. Justice Fell, delivering the opinion of the court, said: "Generally, the cases in which voluntary settlements have been set aside have been—where there had been fraud or imposition in their procurement; where the design had been to give the settlor full enjoyment of his property for life, with power of testamentary disposition, and at the same time to protect it from his creditors; where the instrument was in itself and in connection with other instruments testamentary in character; where the intention to make the instrument revocable clearly appeared; where the purpose of the settlement had failed, or where the trust created was merely a naked one. The rule is that a voluntary settlement will be sustained and enforced in favor of the beneficiaries, unless it is shown that it was procured by fraud or imposition, or executed under a misapprehension of the facts or of the law."

In Kraft v. Neuffer, 202 Pa. 558, it was held that, "in the absence of exceptional circumstances, a voluntary deed of trust, containing no power of revocation, and reserving a life interest in the land to the settlor and his wife during their joint lives, and with remainder over to other persons, is irrevocable;" and in Wilson v. Anderson, 186 Pa. 531, that "if the intention of the grantor at the time he delivers a voluntary deed of trust is to part with the legal title, the trust will be enforced in favor of the beneficiaries, even though their enjoyment of the estate is postponed until the death of their benefactor." In this case the deed contained no power of revocation. By its terms, the legal estate at once vested in the trustee, with a power of alienation, subject to the approval of the settlor, but no power to convey by the settlor was reserved, nor, in case of conveyance of the whole or any part of the land, were the proceeds to pass to the control of the grantor; on the contrary, by its express terms, the subject of the trust was still to remain in the hands of the trustee for investment and reinvestment, to abide the purpose of the trust; there was an absolute vesting of the equitable estate in his brothers and sisters, subject only to his life enjoyment of the income.

In Stockett v. Ryan, 176 Pa. 71, it was held that "the findings of a Court of Common Pleas, sitting as a court of equity, that a deed of trust executed voluntarily, without any coercion or undue influence, with a full knowledge of its contents and the legal effect of it, by a man of intemperate habits, who was wasting and mismanaging his estate, and who executed it for the purpose of protecting himself and his estate from the consequences of his improvident and intemperate habits, making himself and his children the only beneficiaries, fully justified the decree dismissing the bill for the cancellation of the deed." In King v. York Trust Co., 278 Pa. 141, it was said: "The only ground upon which the revocation is asked, as stated in the bill, is that the settlor has become competent to care for his own property, which fact is found by the chancellor. This might sustain the decree if the deed contained a power of revocation, but it does not, and, being in equity, the relief granted must be confined to the pleadings as well as to the proofs."

Many authorities to the same effect, delivered by the appellate courts of this state, might be cited; but we think that the principles which are above set forth are conclusive as to this case. The deed containing no power of revocation, it having been executed voluntarily, without any coercion or undue influence, and with a full knowledge of its contents and its legal effect, and there being no fraud, we are of the opinion that we would not be warranted in setting it aside. For this reason, we are constrained to dismiss the bill. A decree to this effect may be prepared by counsel. Bill dismissed.

From George Ross Eshleman, Lancaster Pa.