## Elliott Estate

*Robert F. Pontzer* and *James S. Crawford, 3rd,* for accountant.

*Edward T. Kelly,* for exceptant.

TRAMBLEY, P. J., August 1, 1955.—This case is before the court on exceptions filed by G. Fred Elliott and the First National Bank at Greensburg to the

third and partial account and statement of proposed distribution of Colonial Trust Company, trustee, under the last will and testament of George F. Elliott, deceased.

From the pleadings and testimony taken in this case the court makes the following

## Findings of Fact

1. George F. Elliott died testate on January 22, 1940. By the terms of his will, after distribution of various items of personal property, he gave, devised and bequeathed the remainder of his property, in trust, to Colonial Trust Company of Pittsburgh, for certain purposes including the following: (a) To pay to the guardian of testator's children from the income of the trust estate such an amount as was necessary to educate said children; (b) pay the balance of said income to the testator's wife during her life or until she remarried; (c) at the death or remarriage of testator's wife all of the estate held by the trustee, in trust, should become vested in testator's children, share and share alike, and if any of said children are at the time of the death or remarriage of testator's wife of the age of 28 his or her share of said estate shall be forthwith distributed. If at that time any of the testator's children have not reached the age of 28 years the trustee shall pay to those who have reached the age of 21 years the income from his or her share of said estate until he or she reaches the age of 28 years, at which time the proper share of the corpus shall be distributed.

2. William E. Elliott, one of the children of George F. Elliott, attained the age of 28 years on July 27, 1953, whereupon the third and partial account and statement of proposed distribution of the trustee, above referred to, was filed so that distribution of the share of William E. Elliott could be made in accordance with the terms of the will.

3. William E. Elliott, on April 1, 1950, voluntarily entered into a trust agreement with Colonial Trust Company and G. Fred Elliott, a brother of William E. Elliott, whereby he conveyed to said trustees all of the real estate wherever situate in which he may have an interest and such cash or deposits of money and securities as appear on schedule annexed to said agreement and marked, "schedule A", and made a part thereof; to have and to hold all of said money and securities and other property unto the party of the second part, its successors and assigns, to and for the only proper use and behoof of the said parties of the second part, their successors and assigns forever, in trust, nevertheless, for the purposes, inter alia, hereinafter set forth.

4. That a part of the consideration for this trust agreement was the fact that William E. Elliott, the settlor, was ill and unable to attend properly to his business.

5. That the trust was to continue until the trustees, relying upon adequate and competent evidence, should determine that the settlor was restored to health and that the management of his estate would not be a burden to him or impair his health.

6. That thereafter, on September 30, 1950, in Westmoreland County, the said William E. Elliott, the settlor in the trust agreement above referred to, was adjudged an incompetent and on the same day the First National Bank of Greensburg and George F. Elliott, also known as G. Fred Elliott, were appointed guardians of the said William E. Elliott.

7. That G. Fred Elliott, who was appointed guardian of William E. Elliott in Westmoreland County and George F. Elliott, who was appointed trustee in the trust agreement above mentioned, are one and the same person.

8. In its third and partial account and statement

of proposed distribution of the estate of George F. Elliott, father of G. Fred Elliott and William E. Elliott, the accountant, Colonial Trust Company, showed, in schedule B, that the distributive share of William E. Elliott in the estate of George F. Elliott amounted to $10,066.53, and that Colonial Trust Company, trustee of George F. Elliott, proposed to distribute this money to itself as trustee for William E. Elliott in accordance with the provisions of the trust agreement between William E. Elliott and Colonial Trust Company and G. Fred Elliott, dated April 1, 1950.

9. G. Fred Elliott and First National Bank of Greensburg filed exceptions to the third and partial account and statement of proposed distribution of Colonial Trust Company as trustee of the estate of George F. Elliott, claiming that this money, as well as any portion of the estate of George F. Elliott which is distributable to William E. Elliott, should be paid to them as guardians of William E. Elliott.

## Discussion

The question before the court, therefore, is whether the trust established by the agreement between William E. Elliott, as settlor, and G. Fred Elliott and Colonial Trust Company, as trustees, shall be continued and all amounts payable or distributable to William E. Elliott paid to Colonial Trust Company and G. Fred Elliott as trustees of William E. Elliott, or the trust terminated and all amounts payable or distributable to William E. Elliott paid to G. Fred Elliott and First National Bank of Greensburg as guardians of William E. Elliott, an incompetent.

This trust was established solely for the convenience and benefit of the settlor, William E. Elliott. It contains no provision for specific benefits to others. Therefore, unless there is some other valid reason for continuing the trust it must be terminated.

As appears from the decisions of our appellate courts: "In order to be irrevocable a voluntary trust deed must contain in it some benefit or advantage to others or be made to protect the settlor against his wasteful habits, intemperance, etc.": Long et al., Appellant, v. Tradesmens National Bank and Trust Company, 108 Pa. Superior Ct. 363, 367; Stockett v. Ryan, 176 Pa. 71, 34 Atl. 973; Reidy v. Small, 154 Pa. 505, 26 Atl. 602. By using the "etc" the court evidently recognized that there are, or at least may be, other reasons than "wasteful habits and intemperance".

Our courts have also said: " 'No matter what may be the nominal duration of an estate given to a trustee, it continues in equity no longer than the thing sought to be secured by the trust demands,' and, when that demand has been fully satisfied, 'although the trust may not have ceased by expiration of time . . . , yet, if all the parties who are or who may be interested in the trust property are in existence and are sui juris, and if they all consent and agree thereto, courts of equity may decree the determination of the trust' ": Stafford's Estate, 258 Pa. 595, 598; Disston's Estate, 257 Pa. 537; Packer's Estate (No. 1), 246 Pa. 97, 108-09; Harrar's Estate, 244 Pa. 542, 549; Woodburn's Estate, 151 Pa. 586; Sharpless' Estate, 151 Pa. 214, 216; Culbertson's Appeal, 76 Pa. 145, 148.

It will be noticed that not only must all parties who may be interested in the trust be in existence, but they must be sui juris. Who are the parties in interest in this trust? Without doubt the settlor, William E. Elliott, and the Colonial Trust Company and G. Fred Elliott have an interest in the trust. The First National Bank of Greensburg and G. Fred Elliott claim that they are parties in interest because of their appointment as guardian of the estate of William E. Elliott, an incompetent person.

Under the trust agreement the settlor has the right to have the income from the trust paid by the trustee to him or for his use and benefit as and when, in the judgment of the trustee, the need arises, to have his taxes, insurance and other expenses paid from the income of the trust and to have the trust terminated when the trustees, relying upon adequate and competent evidence, shall determine that the settlor shall have been restored to health and that the management of his estate shall not be a burden to him or impair his health.

The Colonial Trust Company and G. Fred Elliott have the right and are charged with the duty of receiving all assets of the trust estate; of investing and reinvesting and changing the investments; of paying the income for the use and benefit of the settlor and for taxes, legal, insurance and other necessary and proper charges in connection with the trust; of selling any or all of the assets of the trust estate; of prosecuting, compromising, settling and collecting any claim of the trust estate; of instituting and prosecuting suits, employing counsel and expending money in the prosecution of such claims; of keeping such books and records as may be necessary and employing such clerical, accounting and legal assistance and help as may be necessary therefor; of filling vacancies if the trustee dies or becomes unable to act; of using their absolute and uncontrolled discretion in administering the trust and at the termination of same of paying to the settlor or to such persons as may be entitled thereto all the assets of the trust estate.

The only interest which G. Fred Elliott and the First National Bank of Greensburg may have in the estate arises from their appointment as guardian of William E. Elliott, an incompetent person. Because of their appointment as such guardians they claim that the amount shown to be due William E. Elliott under the

third and partial account of Colonial Trust Company as executor of the estate of George F. Elliott should be paid to them as guardians of William E. Elliott and not to Colonial Trust Company and G. Fred Elliott as trustees of William E. Elliott.

Would the Colonial Trust Company, trustee of William E. Elliott, be justified in paying over to the guardian the assets of the estate of William E. Elliott and his distributive share from the estate of George F. Elliott, deceased, and transferring all of their duties to the guardian? They claim not, because (1) by doing so they would be derelict in their duty and (2) the guardian could not pay out the money for the purpose set forth in the agreement without obtaining permission from the court and this would result in additional expense to the estate as the trustee already has this power: Pleasonton's Estate, 232 Pa. 381, 386, in which the court held that a trustee was derelict in its duty when it turned over to the guardian of an incompetent person the income from the trust estate, the trustee having been charged with the duty of applying said income to the support of the cestui que trust. In that case the court said:

"We quite agree that it was the bounden duty of the appellee, under the terms of this trust, to study for itself the conditions calling for the expenditure of the money, and to acquaint itself with the situation of the cestui que trust, so as to be able to exercise a sound discretion in the matter of disbursement. The confidence reposed was in the judgment and discretion of the trustee, and not in that of an unnamed guardian. Apparently the trustee wholly neglected this duty and committed it to the guardian. While no actual loss because of this is shown, it was nevertheless such a plain and manifest dereliction of duty, that had a forfeiture of right to commissions been decreed on this account, the appellee would have had little reason to

complain. The allowance of commission to the trustee is however not assigned for error, and since it is not complained of, we shall not interfere."

They further cite Partridge's Estate, 241 Pa. 158, 163, in which the court laid down as a general rule that where, by the terms of the trust, the income is payable to the beneficiary without any duty on the part of the trustee to see to its application, or any discretion in him to determine the amounts or manner of payment, it will go to the committee in lunacy. But where discretion as to the payment of the income is given to the trustee, or where he is directed to see to its application, the trustee should retain and disburse the income, and should not pay it to the committee.

The view this court takes of the trust agreement is that the settlor made it for the purpose of protecting himself against mismanaging, wasting, dissipating or losing his property. The agreement specifically states that one of the considerations of the agreement is that he "is ill and is unable to attend properly to his business". The nature of the illness is not set forth but adopting the ordinary meaning of the word "ill" it would be assumed that the illness was physical. However, in the light of future events, that is the appointment of G. Fred Elliott and the First National Bank of Greensburg as guardians of William E. Elliott as an incompetent person, it is quite possible that settlor felt the approach of mental incompetency and made this trust agreement to protect himself and his property against such contingency while he was still of sufficient mental ability to do so.

At any rate the fact that settlor gave his trustee such broad and absolute powers, including power to receive all moneys or other securities which "will or may become distributable to him" and at the termination of the trust pay to the settlor "or such persons as may be entitled thereto" any and all amounts due

under the trust, would indicate that he thought it possible that the trust might continue until his death and intended, unless the trust was sooner terminated under section two of the agreement, that it should do so.

Furthermore settlor provided that the trust should continue "until the trustees, relying upon adequate and competent evidence, shall determine that the settlors shall have been restored to health, and that the management of his estate shall not be a burden to him or impair his health". Undoubtedly the settlor, at any time before he was adjudged a mental incompetent could have terminated the trust agreement as it did not contain any benefit or advantage to others, but when he became mentally incompetent he could not do so. Exceptants argue that, as they were appointed guardian of the estate of William E. Elliott, they have the right to do what the settlor could have done himself, while sane, as they are the persons designated by law to look after the interest of the settlor. However, prior to the time exceptants were appointed, settlor had, himself, appointed persons to look after his interest and we think these persons should be preferred to those designated by a court of law.

Exceptants advance the argument that whether a trust is active or passive it can be terminated at any time by the settlor unless it contains some benefit or advantage to others or is made to protect the settlor against his wasteful habits, intemperance, etc., citing Long et al. v. Tradesmens National Bank and Trust Company, 108 Pa. Superior Ct. 363, 367.

However, even in such cases, the decisions hold that all of the parties must be sui juris: Stafford's Estate, 258 Pa. 595, 598. Certainly this cannot be true in this case where exceptant itself was appointed guardian for the reason that settlor was mentally unsound. Settlor, while sane, as we must here, at least, presume he was, prior to the appointment of the guardian,

made no effort and expressed no desire to terminate the trust. Why should it be presumed that he would desire it to be terminated after he had become mentally incompetent, and was by the very fact of the appointment of a guardian unable to handle his business affairs.

Furthermore we believe it to be the court's duty to do all in its power to preserve estates when brought into litigation; to prevent unnecessary costs, expense, commissions, etc., and that no hard and fast rule can be laid down for handling cases of this kind but that we must be governed by the circumstances and exigencies of each case as it arises in order to best promote the interest of the legatee, settlor, or other person involved and his estate.

In this case the guardian would have to petition the court for permission to do the other things the trustee is already empowered to do. The trustee has had several years' experience in caring for the needs and attending to the business affairs of settlor. Undoubtedly the trustees are better qualified, because of their experience in handling the affairs of the settlor and of the powers given them under the trust agreement to administer the estate than the guardian and administration by the trustees would result in a saving to the incompetent's estate. It appears to this court that it would be inequitable and unduly expensive to award the assets in question to the guardian as it would result in unnecessary court costs, attorney's fees and probably a duplication of commissions.

The court, therefore, makes the following

*Order*

Now, August 1, 1955, the exceptions filed by First National Bank of Greensburg and G. Fred Elliott to the third and partial account and statement of proposed distribution of Colonial Trust Company, trustee under the last will and testament of George F. Elliott

are overruled and dismissed; and it is deemed that the third and partial account and statement of proposed distribution of the Colonial Trust Company, trustee under the last will and testament of George F. Elliott be, and the same is hereby approved and confirmed absolutely, and the one-third share of the trust estate of George F. Elliott, deceased, belonging to William E. Elliott is hereby awarded to the Colonial Trust Company and George F. Elliott, Jr., also known as G. Fred Elliott, as trustees under the trust agreement of April 1, 1950, above referred to.