## Cannistra Estate.

Argued January 9, 1956. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO AND ARNOLD, JJ.

*James M. Dente,* for appellants.

*Mary L. Casanave,* with her *Leo C. Mullen,* for appellee.

OPINION BY MR. JUSTICE BELL, March 13, 1956:

A difficult question is presented by this appeal: Can a testamentary trust be terminated upon the petition of a nephew and niece who are beneficiaries thereunder?

No rule regarding wills is more settled than the great General Rule that the testator's intent, if it is not unlawful, must prevail! This is the reason why so many cases continually proclaim that the pole star in the construction of every will is the testator's intent. Moreover, "The testator's intention must be ascertained from the language and scheme of his will: 'it is not what the Court thinks he might or would have said in the existing circumstances, or even what the Court thinks he meant to say, but what is the meaning of his words': Britt Estate, 369 Pa. [450, 454, 87 A. 2d 243]": *Sowers Estate,* 383 Pa. 566, 119 A. 2d 60.

The foregoing century-old principle or rule is nevertheless subject to several exceptions: For example, the testator's intent cannot prevail when it is against public policy (*Moorehead's Estate,* 289 Pa. 542, 137 A. 802; Cf. also *Africa Estate,* 359 Pa. 567, 59 A. 2d 925) ; or violates the rule against perpetuities (*Newlin Trust,* 367 Pa. 527, 80 A. 2d 819), or statutory restrictions such as the statute of accumulations (*Warden Estate,* 382 Pa. 311, 115 A. 2d 159) ; or where the testator gives a fee simple or absolute estate and then attempts to impose restraints on sale or alienation.[1] (*Sowers Estate,* 383 Pa., supra; *Stineman v. Stineman,* 382 Pa. 153, 114 A. 2d 137.)

---

[1] The reason is that he who has the absolute ownership of a thing cannot be deprived of any of the legal incidents which are an integral part of that ownership. *Johnson v. Provident Tr. Co. of Phila.,* 280 Pa. 255, 124 A. 436.

The rules in this class of case are clear; difficulty sometimes arises in applying these rules, or in determining which rule applies to the facts of the particular case. That is the difficulty with respect to the will of Anthony Cannistra.

Testator gave his residuary estate to trustees in trust:[2] ". . . to collect the income therefrom and to pay said income to my nephew, Anthony F. Cannistra, and my niece, Rosetta Cannistra, both children of my deceased brother, Nicholas Cannistra, *share and share alike*.[3] Said payments of income shall be made quarterly and shall continue *until my said niece has attained the age of thirty (30) years,* at which time the said trust shall terminate and my said trustee shall, from the corpus of said trust, pay to my said niece the sum of Five Thousand ($5,000.00) Dollars cash, and the entire balance of the corpus of said trust, less the expenses of administering said trust, shall then be paid or turned over by my said trustee to my nephew, Anthony F. Cannistra, aforementioned, absolutely whereupon said trust shall terminate.

"In the event that my said niece, Rosetta Cannistra, should die before attaining the age of thirty (30) years, if my nephew, Anthony F. Cannistra, is still living, I direct that the *entire income* from said trust be thereafter paid to him and said trust continue until such time *as my said niece would, if living,* have attained the age of thirty (30) years. [There was no express gift of the entire corpus in that event.]

"In the event that my said nephew, Anthony F. Cannistra, should die during the term of said trust and

---

[2] Testator created an active trust and gave the corporate trust company the power, inter alia, to "invest in any sound income producing securities".

[3] Italics throughout, ours.

during the lifetime of my said niece, Rosetta Cannistra, then and in such event I direct that the *entire income* from said trust be thereafter paid to my said niece and the *corpus* of said trust *be paid to said niece* when she attains the age of thirty (30) years."

The nephew and niece, neither of whom has attained the age of 30 years, seek in this proceeding to terminate the testamentary trust under the following exception to the aforesaid general rule, viz., "If all the parties who are or may be beneficially interested in a trust are in existence and sui juris, *if there is no ultimate purpose of any kind* requiring the continuance of the trust, and if all the beneficiaries consent, a court of equity may decree its termination: [citing cases] :" *Bosler Estate,* 378 Pa. 333, 336, 107 A. 2d 443.

The key words are "if there is no ultimate purpose of any kind requiring the continuance of the trust". In order to answer the question raised by appellants it is wise to analyze some of the prior decisions of this Court, as well as Cannistra's will.

In *Bosler Estate,* 378 Pa., supra, the Court refused to terminate a testamentary (spendthrift) trust although the fund had been so depleted that the income therefrom was not adequate to support the petitioner, who was the life tenant with power of appointment in default of issue, and it was averred he was incapable of having issue. The Court said (pp. 336, 337, 338): "But if the purpose of the settlor in establishing the trust *has not been fully accomplished,* and if the settlor is deceased and therefore incapable of consenting, the trust cannot be terminated even though all the beneficiaries desire that it should be: Bowers' Trust Estate, 346 Pa. 85, 87, 88, 29 A. 2d 519, 520, and cases there cited. . .

". . . The principle upon which the cases rest is the protection of the settlor irrespective of the welfare

or interests of the beneficiary. It was said in Morgan's Estate (No. 1), 223 Pa. 228, 230, 231, 72 A. 498, 499: 'It is always to be remembered that consideration for the beneficiary does not even in the remotest way enter into the policy of the law; it has regard solely to the rights of the donor. . . . the law's only concern is to give effect to the will of the donor as he has expressed it.' "

Tersely expressed, Cannistra gave his residuary estate to his trustees on an active trust to pay the income to his nephew and niece *equally* until the niece attained the age of 30 years, at which time to pay his niece $5,000. cash and his nephew the balance of the principal of the trust (approximately $25,000.). He further provided, however, that if his niece died before attaining the age of 30 years, his trustees should pay the *entire income* to his nephew, if living, until such time as his niece would, if living, have attained the age of 30 years. It is not necessary to decide whether the niece's interest in one-half of the income and in the corpus of $5,000. was vested or vested subject to being divested (or contingent as to corpus). Testator further provided that if his nephew should die during the term of the trust and during the lifetime of his niece, then in such event the entire income should be paid to his niece and the *entire principal* should be paid to his niece when she attains the age of 30 years. Under such circumstances the nephew's interest in one-half of the income and in $25,000. principal was vested subject to being divested, and the niece's interest in said income and principal was contingent.

It is at once apparent that the trust is unusual in that while the same beneficiaries were to receive income and principal, they were to receive the income equally if they both lived until the niece was thirty, but they were to receive the principal unequally; moreover, the

percentage of income and principal each was to receive depended upon and varied with different contingencies, namely, the death of the niece before thirty, or the death of the nephew during the term of the trust and during the lifetime of the niece.

It is clear as crystal that the testator's dominant paramount intent was—not (as appellants contend) to give his niece and his nephew a vested estate in a *specific* percentage of income and in a *specific amount of principal* and merely postpone its time of payment— (1) to *place his entire residuary estate in an active trust for his nephew and niece until the niece attained, or would if living, have attained, the age of 30 years,* and (2) during this period to pay the niece and the nephew the income equally in some cases and unequally in other cases, and thereafter divide and pay the principal in varying percentages in accordance with whatever contingency happened.

Appellants contend that they are entitled at this time—in violation of the clear terms of the will and the testator's clearly expressed intention therein—to a termination of the trust and (so far as the record shows) to a payment of $5,000. principal to the niece and the balance of principal ($25,000.) to the nephew. They base their contention on five decisions, all of which are clearly distinguishable because the wills were materially different from Cannistra's will.

*Allen Estate,* 347 Pa. 364, 32 A. 2d 301, is the case upon which appellants principally rely. In *Allen Estate* the Court commenced its opinion by stating: "We must quash this appeal for the reason that the appellant [the husband of the testatrix] has no interest in the property which is the subject of the controversy: Behringer's Est., 265 Pa. 111, 108 A. 414; Real Est. Tr. Co. v. Pa. Sugar R. Co., 239 Pa. 456, 86 A. 1074." All that the Court thereafter said was completely dictum.

Assuming that the dictum was sound law, the language of that will differentiates it, we repeat, from the Cannistra will. Mrs. Allen, the testatrix, left her residuary estate in trust to pay the income to her sister for life and in the event that her sister survived her, then upon her sister's death, should Eleanor and Carl Mohnert have arrived at the age of 30 years, the trust should cease and the principal should be paid to them share and share alike, " '. . . but should they not have arrived at the age of thirty (30) years, . . . then I direct that the share of either or both of them be held in Trust . . . until, he, she, or they, shall have arrived at the age of thirty (30) years and be distributed and paid over to them as above set out, absolutely and in fee.' " The husband of the testatrix contended that since Eleanor and Carl were not 30 when the life tenant died, he had an interest in the principal if they did not live to be 30 years of age. The Court said that *from the whole scheme of the will, together with the gift over,* if Eleanor and Carl did not attain the age of 30 years, their interest was not contingent but was vested upon the death of the life tenant with full enjoyment deferred. In the instant case (1) there were gifts over both as to income and principal, and (2) the shares of income and principal varied with each contingency as above set forth, and (3) the entire scheme of the Cannistra will was different from the Allen will. It is obvious, therefore, that *Allen Estate* is not a controlling authority in this case.

*Stafford's Estate,* 258 Pa. 595, 102 A. 222, was the next case relied upon by appellants. In that case testatrix devised her estate in trust to pay the net income to her two brothers during their lives and if either or both died before a sister, his or their income should be paid to the sister for life, and upon the death of the last surviving life beneficiary, she devised the principal in fee

to a charitable corporation.. The life tenants conveyed their interest in the trust property to the charity and this Court upon petition of all parties in interest terminated the trust. The Court said, inter alia, a trust " 'continues in equity no longer than the thing sought to be secured by the trust demands'; *and, when that demand has been fully satisfied,* 'although the trust may not have ceased by expiration of time . . . , yet, if all the parties who are or who may be interested in the trust property are in existence and are sui juris, and if they all consent and agree thereto, courts of equity may decree the determination of the trust' . . . In the case now before us, all present and future interests in the trust property having been acquired by the remainderman, the 'thing sought to be secured,' i.e., the protection of the corpus pending the duration of the life estates, has become unessential." In the instant case the thing sought to be secured by the testator, i.e., the protection and preservation of the principal for a financially inexperienced young girl by a bank with financial experience, and the preservation of her contingent right to half the income and to the principal sum of $25,000. has not been secured nor have the testator's three purposes been fully accomplished. In the instant case, unlike *Stafford's Estate,* the testator's dominant intent and his testamentary trust purposes would be violated and destroyed by a termination of his trust...

*Wood's Estate,* 261 Pa. 480, 104 A. 673, the next case relied upon by appellants, is likewise clearly distinguishable. There, testator created a trust for the use of his daughters, to pay the income equally to the daughters, with power in the daughters to dispose of the principal. Upon the death of one of the two daughters, the Court terminated the trust and said: " 'But the trustees have no functions except merely to apply

all the proceeds and profits of the estate to the personal use of the appellant as she might require it. *There is no limitation over* of either the income or principal of the estate to any person. *There are no other estates or interests to be preserved.* It is not a spendthrift trust. It was not a trust for protection during coverture, as the appellant was a widow and not in contemplation of marriage. *No ultimate purpose of any kind requiring the continuance of the trust is expressed in the will,* or can be implied from its terms except the mere payment of the income to the cestui que trust.' "

*Culbertson's Appeal,* 76 Pa. 145, is the next case relied upon by the appellants. In that early case *an agreement* was entered into between a widow and an administrator and a guardian of minor children, under which $2424. should remain in the hands of the administrator to pay the interest to the widow and at her death the principal to the minor children. When the children became of age they united with their mother in requesting the administrator to pay over to her the whole fund, offering fully to release and discharge the administrator. The Court terminated the agreement, saying: "The purpose for which this fund was left in the hands of the appellee was to protect for the heirs the corpus of the estate. This was the thing sought to be secured. That object has been accomplished. The purposes of the trust have been fulfilled. The heirs are of full age, and now desire to take control of their property and place it in the hands of the person who is entitled to its use. Why shall this reasonable request be denied?" That case on its facts is not at all analogous to the instant case.

*Donnan's Trust Estate,* 339 Pa. 43, 13 A. 2d 55, the next case cited by appellants, has even less analogy to the instant will. In that case a wife and children entered into a family agreement. The Court held that

the trust could not be terminated because a party who had a contingent interest did not join in the petition for termination.

In *Bennett's Estate*, 41 Pa. Superior Ct. 579, the testator gave legacies to three grandchildren and then directed that they should be held in trust and the income paid to the legatees as long as the father of the legatees lived, and upon the death of their father the principal was to be paid to the legatees. The Court found that the will did not impose any express duty on the trustee except such as may be implied from the requirement that the income be paid over. No discretion was vested in the trustee and no authority was given to expend any part of the income or principal. The Court held it was a *dry trust* and the children were entitled to terminate it. There was likewise, as above noted, no gift over.

The termination of a testamentary trust is unusual even though it has been sought many times by many trust beneficiaries. We shall briefly review several additional cases which are somewhat analogous to the instant case, yet clearly distinguishable therefrom.

In *Decker Estate*, 353 Pa. 509, 46 A. 2d 218, the will provided that the residuary estate should be held in trust " 'and the income therefrom to be turned over to Glenn Decker at periodic intervals. Said trust to continue until Glenn Decker reaches the age of forty years and at that time the said property is to be turned over to my said nephew, Glenn Decker, absolute.' " There was no gift over. The Court held that the trust was a *dry trust* and was the equivalent of an absolute gift to the donee and the latter had the right to the immediate possession of it. That case is likewise clearly distinguishable from the instant case where there is an active trust with varying gifts over.

In *Africa Estate,* 359 Pa., supra, the Court refused to terminate a trust because all parties in interest did not join. Mr. Justice STEARNE said (page 569): *"Where ..... there is a gift over* in the event that the beneficiary for life or years does not attain a designated age, the element of time does not relate to the payment of the gift, but is a contingency that is annexed to the gift itself. *Such a trust is valid and will be enforced*: Brown's Estate, 289 Pa. 101, 114, 137 A. 132; Allen Estate, 347 Pa. 364, 367, 32 A. 2d 301." In the instant case, we repeat, there are gifts over in the event a beneficiary for years does not attain a designated age, and the gifts over vary with different contingencies, so that *Africa Estate* is clearly distinguishable.

This Court has wisely limited and restricted the termination of testamentary trusts whenever it could reasonably be said that one or more of the ultimate purposes of the testator for keeping the trust alive has not been fully accomplished. (See *Bosler Estate,* 378 Pa., supra, and *Borsch Estate,* 362 Pa., infra). Examples of the determination of this Court to carry out the testator's intent and to refuse to terminate a testamentary trust unless all of the purposes of the trust have been fulfilled and no ultimate reason for its continuance exists, may be found in the cases which hold that even where a gift is vested and all parties in interest are sui juris and petition the Court to terminate the trust, it will not be terminated if the will contains a spendthrift trust provision, or a sole and separate use provision, or a discretionary power in the trustee to pay or withhold part of the income or to terminate the trust. *Spring's Estate,*[4] 216 Pa. 529, 66 A. 110; *Wood's Estate,* 261 Pa., supra.

---

[4] *Spring's Estate* was cited with approval as recently as in *Bowers' Trust Estate,* 346 Pa. 85, 88, 29 A. 2d 519.

In *Spring's Estate,* 216 Pa., supra, the Court refused to terminate an active trust per autre vie notwithstanding the fact that there was no gift over. The trustee was authorized to pay to the life tenants such sum as the trustee may deem for their best interest. The Court wisely refused to terminate the trust and said: "As was said by our present Chief Justice in Holbrook's Estate, 213 Pa. 93, 'In Pennsylvania the right of a man to do as he will with his own has always been liberally construed. Accordingly, a donor, not under any obligation to give, may give with such conditions as he pleases, subject only to the restriction that the conditions shall not be clearly illegal.' That a benefactor has the power to restrict the enjoyment of his bounty through the medium of a trustee during the life of the beneficiary is the unquestionable law of this state: Rife v. Geyer, 59 Pa. 393. . . . Nor does the fact that there was no limitation over affect the validity of the trust, if, as in the case at bar, it clearly appears that it was the intention of the benefactress to create a trust and thus guard her bounty with the protection of a trustee in whose judgment and discretion she evidently had the fullest confidence. It is a primary rule of our cases to give effect to the intention of the testator, and the presumption always is that the intent was lawful. Applying this principle to the present case, there is presented an active trust created by apt words and a testamentary intent clearly expressed, which must be sustained, unless it can be shown that the trust thus created is in violation of an inflexible rule of law or of statutory restrictions. . . . It seems to have been assumed by the learned presiding judge in the court below, . . . that in order to support a trust of this character it must be a coverture trust, or a spendthrift trust, or a trust to support contingent remainders. We do not so understand the law. An active trust may be

created as a protection to the beneficiary because of his inexperience, improvidence, inability to manage his estate or for any other purpose, not illegal, which the benefactor may deem wise or expedient in order to carry out his intentions: Perry on Trusts, section 305. Or as is stated in Pomeroy's Equity Jurisprudence, vol. 2, section 991. 'They (active trusts) may, except when restricted by statute, be created for every purpose not unlawful.' "

In order to grant appellants' petition (to terminate) we have to defeat the clearly expressed, wise intention of the testator, undermine the great general Rule of Will Construction, and ignore or rewrite testator's will. Technical rules of construction should not be resorted to to defeat a testator's clearly expressed intention unless public policy, a statute or prior decisions of this Court make such action imperative. This niece in particular needs the protection of the Courts in order that she may receive (a) the safeguarding which the testator wished her to have during the years of her financial immaturity, and (b) the amount of both income and principal which the testator clearly and specifically willed to her in the event that the nephew died in her lifetime before reaching 30 years of age.[5]

The language of Mr. Justice STEARNE, speaking for the Court in *Borsch Estate,* 362 Pa. 581, 67 A. 2d 119, is particularly appropriate: "We said, in Stoffel's Estáte, 295 Pa. 248, 145 A. 70, P. 251: 'One possessed of testamentary capacity, who makes a will in Pennsylvania, may die with the justifiable conviction that the courts will see to it that his dispositions, legally made,

---

[5] In two years the nephew can, if he lives, come into possession of the $25,000. willed him by his uncle, in which event no loss or damage will be suffered by him or by the niece, and the pole star rule governing the interpretation of wills will not be bent or shaken.

are not departed from by those charged with the duty of performance, or improperly defeated by agreement between those upon whom he bestowed his bounty. . . .' " This always has been and unless changed or modified by the legislature, should continue to be the wise salutary policy of the Courts of Pennsylvania regarding wills.

Decree affirmed; costs to be paid out of the principal of the estate.