## Armstrong Estate

Before Klein, P. J., Bolger, Saylor, Shoyer and Burke, JJ.

*George H. Nofer, 2nd,* and *Schnader, Harrison, Segal & Lewis,* for exceptants.

*Isaac H. Clothier, 4th,* and *Dechert, Price & Rhoads,* contra.

SAYLOR, J., March 8, 1963.—A church charity, the beneficiary of a testamentary trust, seeks its termination with the consent of the two charity remaindermen which would relinquish their interests upon court approval of the termination.

The corporate trustee filed its account because of a lapse of 20 years since the last court accounting and because of the church body's request to present a petition for the trust's termination. The attorney general received notification of the presentation of the petition but did not contest it. The trustee opposed termination. The learned auditing judge denied the prayer of the petition and awarded the trust res back to the trustee. The church body and the two charity remaindermen have filed exceptions to the adjudication.

Margaret A. Armstrong died March 19, 1921, leaving a will whereby in article third she gave to Girard Trust Company (now Girard Trust Corn Exchange Bank) her real estate in Upper Chichester Township, Delaware County, Pennsylvania, in trust to permit the use thereof "for the purposes of the Memorial Presbyterian Church at Boothwyn, Delaware County, Pennsylvania . . .", together with $20,000, the income from which to be used "for the payment of the salary of the minister of the said church, the upkeep of the church property and such other necessary disbursements in connection with the said church as in the opinion of the trustee shall be necessary and proper, provided however, that if the said real estate hereinabove described shall remain unused for the purposes of the said church for a period of five years at any one time, the said real estate, together with the said sum of Twenty Thou-

sand Dollars ($20,000.00), together with all accumulations thereon and additions thereto and all undistributed income, shall fall into and become a part of my residuary estate to be distributed with it as hereinafter set forth."

Testatrix gave two-thirds of her residuary estate to the Board of Foreign Missions (now known as the Commission on Ecumenical Missions and Relations) and one-third to the Board of Home Missions (now Board of National Missions) of the Presbyterian Church in the United States of America.

The Memorial Presbyterian Church at Boothwyn is subordinate to the presbytery in Philadelphia and the General Assembly of the Presbyterian Church in the United States of America. The church's governing body is comprised of the minister and ruling elders, known as the Church's Session, and of a board of trustees having the responsibility for taking care of the church property. The presbytery has given approval to the termination of the trust. If the trust were terminated, and thereafter the church should cease to exist, the church property would pass to the presbytery.

The church structure was built in 1885 on property owned by testatrix' father as a memorial to a member of the family. This property, also improved by a manse, passed by inheritance to testatrix on her father's death. The church is located in a residential area where there is need for it.

For 78 years the church has occupied and used the property. For the past 42 years it has in addition enjoyed the income from the $20,000 of trust principal. Such income is now $650 a year. The church has a membership of 240 and has an annual budget of $9,000. The real estate is valued in the account at $35,000.

Averments in the church's petition and testimony of the pastor and of an elder indicate that there is need to renovate and enlarge the physical plant at an estimated

cost of from $30,000 to $60,000. In order to secure funds for this purpose, it was testified that title to the church property and the trust fund should be in the governing body because the congregation is not inclined to give its financial support when the church lacks a proprietary interest in land and buildings. During the four and a half years of the present pastorate there had not been any capital fund campaign.

The learned auditing judge found that the gift over to two mission boards was absolute and clearly intended for missionary purposes of the Presbyterian Church; that if the trust were terminated and thereafter the Memorial Church "ceased to operate for a period of five years, the property would . . . revert to the Presbytery not to the missionary organizations intended by the testatrix"; and that it had not been shown that the trust had failed in its purpose and was impossible of fulfillment. With this we are in full accord as the mission boards are just as much beneficiaries of the trust as is the church body: Schellentrager v. Tradesmens National Bank and Trust Co., 370 Pa. 501 (1952).

Cited in the adjudication is Baughman's Estate, 281 Pa. 23 (1924), wherein, at page 40, Justice Simpson said:

". . . it requires but a sight acquaintance with human nature, as exemplified in the governing body of church organizations, to know that unless halted the Macedonian cry for help would probably soon exhaust every available fund, and leave this memorial church without an endowment. This fact was doubtless well known to testator, who, as already stated was a member of the church; to prevent such a possibility was probably his reason for creating a trust of his residuary estate, and giving only the income to the church, thus ensuring, as far as he could, the perpetuity of his memorial. Transferring the principal to the church would entirely defeat this purpose, and hence cannot be permitted."

The learned auditing judge found that testatrix designated a private corporate trustee to manage the trust because it was evident that she "intended to deprive the cestui que trust of the management of the trust res during the period it enjoyed her gratuity."

Exceptants contend that since all beneficiaries of the trust, the life-tenant and the two remaindermen, have consented to the termination the trust should be terminated, there being no spendthrift trust or similar provision imposed by testatrix. They rely on two Supreme Court cases and on Restatement, Trusts, 2d, §337.

In Stafford's Estate, 258 Pa. 595 (1917), the two individuals who were the remaining life-tenants had assigned their interests in a trust to the charity which had a vested interest in the remainder. The court held that the purpose of the trust was to protect the corpus pending the duration of the life interests and when that purpose had been accomplished the trust could be declared terminated. There being involved no question of accumulation of income for the remainderman charity's benefit, the principal could be paid over to it.

Stafford's Estate is not apposite. It is authority for termination where the life estates of living persons are surrendered and the charity remainderman takes the trust res. In our case, the charity life-tenant seeks that res and the remaindermen take nothing. All this is contrary to the will of testatrix who presumably intended to benefit the church for an indefinite period, not one measured by a human life. Only when after five years of inactivity the church authorities have evinced an inability to continue their functioning was the trust to terminate and the remaindermen to come into their own.

Nor is Musser's Estate, 341 Pa. 1 (1941), helpful to petitioner. The sole question there involved was whether a trustee had standing as an aggrieved party to appeal from a declaratory judgment decree declaring

the rights of three charitable remaindermen in the distributable corpus of a terminated trust. The court held that the trustee was a mere stakeholder; his appeal was quashed.

Exceptants rely also on section 337 of Restatement, Trusts, 2d, reading:

"(1) Except as stated in Subsection (2), if all the beneficiaries of a trust consent and none of them is under an incapacity, they can compel the termination of the trust.

"(2) If the continuance of the trust is necessary to carry out a material purpose of the trust, the beneficiaries cannot compel its termination."

Comment g of the Restatement provides:

"Thus, if one of the purposes of the trust is to deprive the beneficiary entitled to income of the management of the trust property for the period during which he is entitled to the income, the trust will not be terminated during the period, although both of the beneficiaries are of full capacity and desire to terminate it . . ."

Exceptants argue that there is no longer any material purpose in the trust although the auditing judge declared that "The general rule is that a trust to pay income to a charitable institution forever is an active trust which may not be terminated by the demand of the institution that the principal be paid to it, even with the consent of the trustee", with which statement the exceptants state they have no quarrel.

Exceptants' postulate that a termination of the trust before us would not defeat testatrix' purpose and is therefore in harmony with the cases they cite and with Scott on Trusts, Vol. IV, §367 A, is based on a misconception of the results accomplished in the cases cited. Here the charity is the life-tenant and as such is to enjoy the benefit of the testatrix' bounty on testatrix' terms. Those terms provide in no manner whatsoever for an estate in fee.

The very fact that during the lifetime of her father and during her own lifetime the title to the real estate on which the church edifice stands was held not by the congregation but by the father, and in turn the daughter, is evidence indeed of her desire to continue to withhold the grant of a fee. Testatrix chose a corporate fiduciary to succeed her as title owner in order to assure continuance of the use of the church edifice as such by the congregation, assisted by income from the $20,000 trust personalty.

The additional fact that discontinuance of such use was not to affect the right thereto, unless such discontinuance or failure of use lasted for five years, is further evidence of the testatrix' wish to give every encouragement and opportunity to the church body to continue in existence because the testatrix' father intended it as a memorial to his family, and the daughter wished it so to remain.

Furthermore, the very fact that in the event the church property should "remain unused for the purposes of the said church for a period of five years at any one time" the real estate and the $20,000 fund were to become part of the testatrix' residuary estate and not go to the church body evidences the desire that the church body was to enjoy use only and never ownership.

Exceptants argue that it was not for the auditing judge to consider what testatrix' purposes may have been in making an absolute gift to the two other charitable organizations. While the fact that the gifts of the residuary estate are absolute entitled the two boards to relinquish their remainder interests in the trust corpus, that does not preclude the court from giving full consideration to the purposes of decedent as determined from a thorough study of her will.

The residuary legatees on the date of decedent's will carried the word "Missions" in their titles. One of the

boards was concerned with foreign missions and one with home or domestic missions. Neither one was concerned with the Memorial Church except in so far as a board's connection with what is now called The United Presbyterian Church of the United States of America brings it within the field of action of that church through the presbytery. Even though the once-named Board of Home Missions (now called the Board of National Missions) may some day concern itself with the fate of a domestic mission or church such as the Memorial Church, and may use board funds to assist it, that does not affect the situation created by the establishment of the trust before us.

Testatrix has set up a scheme for the use and enjoyment of her bounty. Whatever may be the actions of the various institutions that are the objects of such bounty in attempting to remold that scheme to suit their plans and arrangements, this court can not and should not permit them to ignore the clear purposes of testatrix. The Memorial Church wants the entire corpus of the trust; testatrix wanted the church to enjoy only a life interest during such period of time as it desires to continue in enjoyment and use of the church property. The Mission Boards want the church to have the trust corpus; testatrix wanted the Mission Boards to have and enjoy for their purposes the trust res only after the life-tenant no longer needed or wanted it. However cavalierly life-tenant and remaindermen may act, it is the duty of the court having jurisdiction over the trust estate to protect and preserve it as its creator intended. She is not here to do this; the court must act for her.

In Harrison's Estate, 322 Pa. 532 (1936), the court refused to terminate a spendthrift trust under the provisions of the Act of April 14, 1931, P. L. 29, because to do so "would effect a result which the creator of the trust emphatically desired to prevent." It was held that the recognition of a testator's right to protect

his heirs from a presumed incapacity to manage inheritances is a definite policy of the common law. To the extent that the act is in derogation of the common law it must be strictly construed. The court so construed the act and preserved testator's right to dispose of his property as he saw fit.

So here the testatrix quite properly preserved in the hands of a corporate fiduciary the right and duty to safeguard the trust res against any possibility of its dissipation by the church body. That such possibility might become probability is evidenced by the record, which shows that at least one purpose of the session of the church body might be the procurement of a mortgage secured by the church property were title in fee to be obtained. Testatrix wisely anticipated the possibility of too great a reliance on outside help and therefore planned to protect the church from such lack of self-reliance as would result in the loss of the property were it given in fee.

The will lodges discretion with the trustee in paying over trust income for the minister's salary and the upkeep of the church property and "such other necessary disbursements in connection with the said church as in the opinion of the trustee shall be necessary and proper." Were the trustee to desire to devote income to a purpose for which the church body might not provide funds, however urgent the need, the trustee could exercise the right to protect the beneficiary in any manner it deemed wise or expedient in order to carry out the testatrix' intentions: Spring's Estate, 216 Pa. 529 (1907).

The right to exercise discretion in paying out income to the church body would become extremely important in the event the use of the church edifice were discontinued. During any waiting or testing period of five years as prescribed by testatrix, it is imperative that

the trustee use income to safeguard the principal asset of the trust, namely, the improved real estate. Testatrix foresaw the possibility of the discontinuance of church use of her property and made provision for its protection during any period of such nonuse by preventing the passing of a fee title to the church body when there might remain no safeguard at all for the property. Without such protection, and the church property were lost, there would be no longer any memorial to the testatrix' family and nothing in the hands of the Mission Boards upon which testatrix desired to bestow her bounty were the church to cease to function on her property.

If, as suggested by the exceptants, the trust arrangement threatens the Memorial Church's existence (after 42 years under the trust) the protection which the trust affords the church body is emphasized and made even more necessary rather than diminished or ended. Testatrix, having made no provision for invasion of principal, is presumed to have intended that her assistance to the church body be limited to the use of land and real estate and of income from a modest trust fund.

Were the church congregation to disband, and were the church buildings to be abandoned once title thereto had passed to the church body, the property would be taken over by the Philadelphia Presbytery which itself might sell it or perhaps raze the church building and devote the land to a use quite other than as a memorial to testatrix' family. The result would probably be that which would follow the application of the cy pres doctrine. The trust assets would be diverted to a purpose other than that intended by testatrix: Craig Estate, 356 Pa. 564 (1947). She expressed herself without any ambiguity or uncertainty when she directed that the estate held in trust was to be used for foreign and domestic missionary purposes if it did not continue to serve the Memorial Church.

This court is fully cognizant of the need to protect charitable trusts and to assure their conduct and operation in harmony with the desire and expressed commands of the benefactors whose generosity and benefactions make them possible. In Smith's Estate, 56 D. & C. 60 (1946), the late esteemed Judge Hunter of this court said, at page 66:

"There is a distinction between a trust for an individual and one for charity where the obvious purpose of the testator is to protect the property from diversion and waste, and to preserve it in perpetuity as a memorial. It is the right of a donor to condition or limit his gift as he pleases, where no policy of the law is infringed. . ."

There is no policy of the law infringed upon here. The trust has been running for 42 years and it should continue to run.

There are several material purposes to be carried out:

1. Management of the church property and of the trust fund is to be in the trustee, not in the church body.

2. It is the discretion of the trustee and not of the church body that is to be exercised in the application of the fruits of testatrix' bounty.

3. It is the Mission Boards of the Presbyterian Church, and not the Memorial Church, or its possible successor, that are to receive the trust principal if the trust fails.

It is the terms of the donor of the trust principal that are to be honored and not the wishes of the donee when in conflict therewith. The trust has not failed in any of its several purposes and it is not by any means impossible of fulfillment. The continuance of the trust is necessary to carry out the purposes of the testatrix.

For these reasons the exceptions are dismissed, and the adjudication is confirmed absolutely.