## Haag Estate

*J. Lawrence Grim,* for accountant.
*Martin J. King,* guardian ad litem, p.p.

SATTERTHWAITE, *P. J.,* August 8, 1975—The first and final account of Bucks County Bank and Trust Company, executor of the estate of said decedent, was presented to the court for audit, confirmation and distribution of ascertained balances on April 7, 1975, as advertised according to law. Due proof of appropriate notice thereof to all parties legally interested in said estate appears in the record.

Said account has been examined and audited by the court. Balances for distribution shown thereby

include principal in the amount of $20,347.30, composed of pre-audit distributions at $11,392.35 and cash of $8,954.95, and income in the amount of $35.99 in cash. Said respective balances for distribution appear to have been correctly computed and stated on the accounting filed. Accountant is hereby given full judicial credit for the claimed pre-audit distributions, receipts and releases therefor being attached to the petition for adjudication.

No additional receipts or disbursements since the accounting were suggested.

Pennsylvania transfer inheritance tax has been paid in full, and liability therefor on the appraisement filed on November 15, 1974, has been discharged, as per certificate of the register attached to the petition for adjudication.

No unpaid claims against the estate were presented.

The only problem requiring adjudication is accountant's application, joined in and consented to by all presently ascertained parties interested in the within estate, to terminate certain trusts and distribute principal to the income beneficiaries on the theory of failure of the trust purposes, a result argued to flow from the application of section 6102 of the Probate, Estates and Fiduciaries Code of June 30, 1972, P.L. 508 (No. 164), 20 Pa.C.S. §6102, as amended. The court has appointed a guardian and trustee ad litem for possible minor and unascertained remaindermen. The guardian-trustee ad litem has investigated the facts, which are undisputed, and filed his report recommending against the proposed termination. In lieu of a hearing, counsel for accountant has agreed, in his brief, that the facts stated in the guardian's report are correct.

Decedent died February 18, 1974, a widower, his wife having died about a year and a half earlier. He

had made his will on April 4, 1973, about ten months prior to his death. By the testamentary document, he bequeathed $10,000 outright to his daughter Eleanore H. Crouthamel, and $1,000 to a church. He left his household goods and all other tangible personal effects to his two grandsons, Willard William Crouthamel and Allen Harvey Crouthamel, or the survivor.

Article 5 of the will gave testator's residuary estate upon the trusts herein sought to be terminated. He thereby left the residue to the within accountant as trustee to divide the same into two parts, one for grandson Willard and one for grandson Allen, paying income to each respectively. He further directed the trustee to pay one fourth of the principal of each trust to the respective grandson as he attained the age of 40 years, another quarter at age 45, another at age 50, and the final quarter at age 55. He also provided for the possible deaths of either or both grandsons prior to final distribution, directing that remaining principal and undistributed income upon the death of either be held for "that beneficiary's descendants, per stirpes," or, if none, then to become a part of the trust for the other or his descendants if he be deceased.

Article 7 of the will was a spendthrift clause. Article 10 authorized the trustee not only to apply income of a minor or incompetent beneficiary for his support, education and welfare, but also, in its discretion, to pay over principal to the parent or other person maintaining the minor or incompetent, "should the share of the minor or incompetent, in the sole opinion of the Trustee, be or become too small to warrant continuing such fund in trust, or should its administration be or become impractical for any reason." No such authorization was given to the trustee to terminate or invade principal for

the benefit of the grandsons or any other adult or competent beneficiaries.

Decedent's estate, as enumerated in accountant's inventory, consisted of his residence, half of a double house in Perkasie, valued (and sold by accountant) at $24,500, household goods and personal effects sold for about $800, a $1,000 life insurance policy and a $2,500 savings account; the total gross estate was slightly over $29,000. After deduction of debts, taxes and expenses of administration, the pecuniary legacies and the specific bequests of the proceeds of the personalty, accountant will have a principal balance of $8,954.95 as residue to fund both of the trusts for the grandsons. It, of course, takes the position that the less than $4,500 corpus of each of such trusts would be too small to be of practical administration and effectuation of trust purposes.

Neither of the grandsons is of an age meeting testator's directions for distribution of principal. Willard William Crouthamel is presently 34 years old, single and with no children. He is employed, as he was at the time testator made his will in 1973, as a statistical analyst in Atlanta, Ga. His income and other financial resources do not appear. Allen Harvey Courthamel is 30 years of age, married but childless, lives in Doylestown, and is, and was when testator made his will, employed part time by another, and partly self-employed in his own right, as a tilelayer and workman. His income and economic status likewise do not appear.

It is clear, under common-law considerations and regardless of the consent of the parties, that the trust cannot be presently terminated in view of the restrictions on distribution of principal and the spendthrift clause, both of which constitute unful-

filled trust objectives. It is true that if all parties who are, or may be, beneficially interested are in existence and sui juris and give their consent, and if there is no ultimate purpose requiring continuance thereof, a trust may be terminated by a court of equity; it is equally well established, however, that if the purpose of the creator of the trust has not been accomplished and such settlor is deceased and, therefore, cannot consent, then the trust may not be terminated even though all beneficiaries desire that it should be: Bosler Estate, 378 Pa. 333, 336-37, 107 A. 2d 443 (1954); and see Cannistra Estate, 384 Pa. 605, 121 A. 2d 157 (1956); Ryan Estate (No. 2), 30 D. & C. 2d 409 (1963).

By section 2 of the Estates Act of April 24, 1947, P.L. 100, as amended by the Act of February 17, 1956 (1955 Session), P.L. 1073, sec. 1, 20 P.S. §301.2, now section 6102 of the PEF Code, the legislature has modified this common-law rule, both retroactively and prospectively, with respect to certain and not unlimited cases of trusts wherein there has been a so-called failure of purpose. The statutory objective is to permit a treatment analogous to that developed under the cy pres doctrine for charitable uses, so that the settlor's intention and trust objectives might be carried out as nearly as may be despite the failure or impracticability of the purposes indicated by his literal directions. Section 6102 reads, in relevant part:

"The court having jurisdiction of a trust heretofore or hereafter created, regardless of any spendthrift or similar provision therein, in its discretion may terminate such trust in whole or in part, or make an allowance from principal to a conveyor, his spouse, issue, parents or any of them,

who is an income beneficiary, provided the court after hearing is satisfied that the original purpose of the conveyor cannot be carried out or is impractical of fulfillment and that the termination, partial termination, or allowance more nearly approximates the intention of the conveyor."

It is to be noted that, basically, there are two conjunctive criteria to be met before this statutory authorization may be given effect. The court must be persuaded *both* (1) that the settlor's intention or purpose cannot be carried out or is impractical, *and* (2) that termination and distribution of the corpus would more nearly carry out the settlor's objectives in creating the trust: Curry Appeal, 390 Pa. 105, 109, 134 A. 2d 497 (1957); Day Estate, 455 Pa. 610, 616, 317 A. 2d 648 (1974); Annotation, Fiduciary Review, June 1961.

Counsel for accountant herein does not dispute these considerations. His interpretation of testator's intentions and trust purposes, however, is not substantiated by the record, and his argued conclusions therefrom are accordingly unjustified. He contends that testator "indicated a desire to have each grandson in full control of the total assets of the trust during each grandson's lifetime . . . [plus] . . . a desire to assure a supplementary income to each grandson to help him through the period of establishing a career and raising a family."

These premises are without factual support. The specific restrictions postponing distribution until future ages have been attained make it totally unrealistic to argue that testator intended "control" by each grandson "during" his respective lifetime. He certainly intended such ultimate control "within" each grandson's lifetime if he lived long enough,

but that is not to say that he proposed such dominion *throughout* ("during") such lifetime, which is the innuendo of the argument. Nor is there anything more than conjecture to support the further premise that testator intended any purpose to provide significant income for the grandsons, whether "supplementary" or not, and whether for the objective of "establishing a career and raising a family" or otherwise. Indeed, the reasonable inference from such meager facts as do appear would tend to negative such purposes. Both grandsons apparently had "careers" at the time when the will was written; neither was then, or now, "raising a family." That testator had any idea of providing any realistic income or other immediate financial benefit for his grandsons from his limited estate is, in fact, negatived by the nature and value of his holdings and the other benefactions which he made. There is no reason whatsoever in the record to believe that testator had any significantly greater worth in April 1973 when he wrote his will than he had at his death in February 1974. And, after taking out the value of his personal effects and the $11,000 in pecuniary legacies, he certainly must have known that his residuary estate would be modest and that the income therefrom would be minimal.

Under the circumstances, the auditing judge believes, and hereby finds, that the only actual and definite purpose or intention of the within testator in creating these trusts inferable from the record facts was, for undisclosed reasons or motivations, to preserve and factually keep from them their respective shares of what he regarded as their ultimate inheritances, until they had reached progressive stages of middle age. This inference seems apparent not only from the very trust limitations

themselves so stating, but also from other provisions of the will, such as the spendthrift clause, the differing and completely contrasting provisions for others, including the outright legacy to testator's daughter and the provision for discretionary termination and distribution of principal for possible minor or incompetent beneficiaries.

If, as the auditing judge apprehends to be the fact, testator's real purpose was to preserve these necessarily limited funds against possible future needs of the grandsons, who would seem to have been self-sustaining currently, and toward whose present needs the help and assistance from this limited source would not seem to have been regarded as a significant factor, then it cannot be said, as required by section 6102, either that such purpose has failed or that termination and present distribution would more nearly carry it into effect. In short, this statute simply has no application, and the Bosler common-law considerations control. Compare the results where similar conclusions were reached as to the failure of the proposed termination to carry out the settlor's objectives in such cases as Schweizer Estate, 1 Fiduc. Rep. 350 (1951); Hibshman's Estate, 10 Lebanon 1 (1964). Note the considerable stress laid upon settlor's expressions of intention in Newhall Trust, 19 Fiduc. Rep. 456, 47 D. & C. 2d 59 (1969), as the justification for permitting termination.

The instant case is not like the typical "failure of purpose" case where the quite obvious objective to give income to a prime object of settlor's bounty for his or her support and maintenance is frustrated by inadequacy or other ineffectiveness, and the only way in which the purpose can be effectively carried out is to terminate the trust, in whole or in part, and

distribute principal: Honeywell Estate, 70 D. & C. 472, 474 (1950). See also Kelby Estate, 2 Fiduc. Rep. 268, 276-77, 80 D. & C. 1, 8 (1952); Cheston Estate, 12 Fiduc. Rep. 118, 26 D. & C. 2d 61 (1961); Miller Estate, 12 Fiduc. Rep. 404, 27 D. & C. 2d 239 (1962); Hobbs Trust, 16 Fiduc. Rep. 543 (1966); Mannion Estate, 41 D. & C. 2d 532 (1966). These and other similar decisions typify a far different situation than that herein presented. They do not stand for the proposition that supposed inadequacy of income or possibly uneconomic administration, alone and of themselves, are grounds for overriding a settlor's intention and desires in creating the trust.

For the foregoing reasons, the within application to terminate the instant trust and distribute principal to testator's grandsons at this time is hereby denied and refused, and accountant is hereby directed and required to award the net ascertained principal balance still in hand upon the trusts provided by article 5 of decedent's will.

The request of the guardian and trustee ad litem for compensation for services herein in the amount of $125.00, payable from principal of the within estate, is hereby approved and directed to be paid by accountant.

No schedule of distribution need be filed.

The account is hereby confirmed, and it is ordered and decreed that Bucks County Bank and Trust Company, executor as aforesaid, shall make and pay the distributions herein awarded forthwith upon the absolute confirmation hereof.

And now, August 8, 1975, the within adjudication is directed to be filed and is hereby confirmed nisi.